GEO. W. L. DENHAM, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An application for a continuance is always addressed to the sound discretion of the court, and such discretion will not be controlled by the Appellate Court, unless it appears that the court below acted unfairly and abused its authority, whereby the rights of the party may have been jeopardized.

2. It is not error for the court of its own motion, after having fully charged the jury in a criminal case, to read to them the section of the statute applicable in regard to recommendation to mercy in case of the conviction of the prisoner.

3. Where the record shows that the "case was called and the prisoner duly arraigned," and again that the "defendant was arraigned and the indictment in said cause was read to him and the question was asked of him, Are you guilty or not guilty, to which he replied, Not guilty," upon which plea he went to trial without any objection, it is held to be a sufficient arraignment.

4. The record shows that the oath administered to the jurors on their voir dire was as follows : "You and each of you do solemnly swear, you shall give to such questions as may be propounded to you, touching your competency as jurors, as shall be the truth, the whole truth, and nothing but the truth, So help you God." No objection to the form of the oath was made. The jurors were accepted, duly sworn and tried the cause. There is no particular form for such oath prescribed by statute ; Held, not to be error.

5. A venireman sworn on his *voir dire* stated that he had formed an opinion from what had been told him. The court then asked him if the impressions that had been made on his mind by what he had heard would readily yield to the evidence on the trial, and he replied that they would. The court ruled that he was a competent juror ; *Held*, Not to be error.

6. Murder in this State is no longer a common law offence, but is a statutory one, and is divided into three classes. In the first it must be premeditated, in the other two degrees it may be without premeditation. Such premeditation must be charged in the indictment in the language of the statute in order to make it murder in the first degree. Bird vs. State, 18 Fla., referred to and commented on.

Writ of error to the Circuit Court for Marion county.

MR. JUSTICE RANEY did not sit in this case.

The facts of the case are stated in the opinion.

*S. D. McConnell* and *R. B. Hilton* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

On the twenty-second day of October, in the year 1885, Geo. W. L. Denham was indicted for the murder of Peter B. Tillis. On the 23d day of the same month the case was called " and prisoner was duly arraigned, and upon his arraignment pleaded not guilty." On the 26th day of the same month of October, the defendant's counsel moved for a continuance of the cause, supported by an affidavit, as follows :
" STATE OF FLORIDA—Marion County.

" THE STATE OF FLORIDA, ⎫
     VS.   ⎬ Murder.
GEO. W. L. DENHAM. ⎭

"In person appeared Geo. W. L. Denham, the defendant

in the above stated cause, who being duly sworn says, that he is not ready for trial at the present term of this court, on the indictment found in said cause, and filed on the 22d day of the present month, on the following grounds, to wit: the absence of Isham C. Ellis, who is a material witness for the defendant. Affiant further says that the said Isham C. Ellis has been duly subpœnaed as a witness for himself, the defendant, and the subpœna has been duly returned by the sheriff. Affiant further says that he expects to prove by said Ellis, that he, the said Ellis, told George Ellis that he had heard that Peter B. Tillis, the party named in the indictment as being killed by affiant, had said [certain defamatory things concerning affiant,] and that he had heard said statement from one Gillis Ellis, and that the said Gillis Ellis had told him, the said Isham C. Ellis, that the said Peter B. Tillis stated that to him, and so asserted in a conversation which he had with him a short time before the first day of May last, to wit: the night before, and had also asserted in said conversation that he had witnessed the said actions charged, and that the said Peter B. Tillis also made the same assertion to the said Gillis Ellis on the morning of the first day of May, 1885. Affiant further says that the said Isham C. Ellis is unable to attend this term of the court on account of sickness. That he is now confined to his bed; that he cannot prove the facts above stated by any other witness; that he expects to procure the attendance of said witness at the next term of this court, and that this motion is not made for the purpose of delay."

Sworn to, &c.  Signed by Defendant.

October 26th, 1885.

To this affidavit was appended a certificate of a physician, as follows:

"OFFICE OF DRS. ELLIS & FURGUSON, }
CITRA, FLORIDA, Oct. 24, 1885. }

"*To Hon. Judge King, Ocala, Florida:*

"This is to certify that Mr. and Mrs. I. C. Ellis are both unable to attend court. Mr. I. C. Ellis is now confined to his bed with dropsy, and his wife is suffering with remittent fever, neither of them being able to be out of the house.

"Signed this 24th day of October, 1885.

(Signed,) "W. W. ELLIS, M. D."

This motion for continuance was overruled and the defendant's counsel took an exception. The next day, 27th day of October, the cause came on for trial.

The jury found the prisoner guilty and recommended him to mercy.

The counsel for the defendant then moved for a new trial upon the following grounds:

1st. The court erred in refusing a continuance.

2d. The court erred in reading to the jury, after he had delivered his written charge, sec. 19, page 448, of McC.'s Digest, in regard to the recommendation to mercy in case of the conviction of the prisoner.

3d. That the prisoner was not properly arraigned.

4th. That the jurors put upon the prisoner were not properly sworn on their *voir dire.* The name and style of the cause not being stated to the jury, and the prisoner's name not being mentioned, nor the charge stated, and said jurors not being informed of the party to be tried or the charge upon which he was to be tried.

5th. That the court erred in putting upon the prisoner as a competent juror against the prisoner's objection, one W. W. Jackson.

6th. That there was no evidence before the jury, and no fact proven by the State from which the jury could find

that the homicide was committed by the prisoner with a premeditated design to effect the death of the deceased.

7th. Because the verdict is contrary to the evidence, &c.

8th. Because the verdict is contrary to law.

This motion for a new trial was overruled and the defendant took an exception.

The court then sentenced the prisoner to imprisonment for life, from which judgment the defendant appeals to this court, and assigns as error the same as on the motion for a new trial, with the following:

"That the court erred in proceeding with the trial of the appellant, after a jury had been empanelled without proper arraignment, and without having the indictment read to the jury.

"The indictment is fatally defective in not following the words of the statute."

It is alleged that the court erred in not granting the continuance asked for by the defendant on account of the sickness of the witness, Isham C. Ellis. A motion for a continuance is addressed to the sound discretion of the court; such discretion is not however beyond the control of the appellate court. Such applications are generally left to the court having the parties before it, and are determined from a variety of circumstances occurring in its presence, as to whether such motions are made in good faith. In the case of Gladden vs. The State, 12 Fla., 562, the court has said: "An appellate tribunal should never, except in a plain case, control discretion of this character in matter of practice, as it has not the opportunity of knowing many things which should to some extent control the exercise, and which the court before which the case is tried knows necessarily.'" The same rule was announced in McNealy & Roulhac vs. The State, 17 Fla., 198. The court there says: "The application is addressed to the sound discretion of the court,

and except it appears that there has been a gross abuse of discretion whereby the rights of the accused may have been jeoparded the decision of the court will not be disturbed." See also Barber vs. The State, 13 Fla., 675 ; Harrell vs. Durrance, 9 Fla., 490. The affidavit is contradictory in this, that it shows that Gillis Ellis had given to Isham C. Ellis the information which it was desired to offer in evidence by Isham C. Ellis, and then alleges that he cannot prove the facts above stated by any other witness. If the affidavit is to be taken as it reads, the evidence of Isham C. Ellis would not have been competent as it was only hearsay, the items having been communicated to him by Gillis Ellis. The affidavit says, "that he (Isham C. Ellis) had heard said statement from one Gillis Ellis, and that the said Gillis Ellis had told him, the said Isham C. Ellis, that the said Peter B. Tillis stated that to him (Gillis Ellis), and so asserted in a conversation which he had with him a short time before the first day of May last, to wit, the night before." It clearly appears that the information Isham C. Ellis had of the alleged conversation was entirely derived from Gillis Ellis, and could not have been used on the trial. If the evidence was material, and was admissible as a part of the *res gestœ*, it could only have been proven by Gillis Ellis, who does not seem to have been introduced on the trial as a witness. The court did not err in refusing the continuance.

The second error assigned is that the court erred in reading to the jury, after he had delivered his written charge, sec. 19, page 448, of McClellan's Digest, in regard to recommendation to mercy in case of the conviction of the prisoner. That section is as follows :

"Whoever is convicted of a capital offence and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment in the

State prison for life, with or without solitary confinement, at the discretion of the court.".

The record shows that after the court had read to the jury his charge he read to them the foregoing section in regard to recommendation to mercy in case of the conviction of the prisoner. That the counsel for the prisoner excepted to such ruling. We can see no error in the court in reading this section of our statutes to the jury. It is his duty to do so when requested by counsel. Counsel may themselves read it to the jury, and we can see no reason why the court of its own motion should not in cases where it might be applicable.

It was no part of his charge.

In the case of Keech vs. The State of Florida, 15 Fla., 591, where it was alleged that the court erred in omitting to instruct the jury that the law allowed them to add to their verdict a recommendation of mercy as provided in the above section, this court says: "We know of no rule requiring the court to instruct the jury in regard to the punishment to be inflicted upon criminals. It would be very proper for the court to instruct the jury as to the existence of this law, in all capital cases, and it would undoubtedly be the duty of the court to do so if it were specially requested." Metzger vs. The State, 18 Fla., 481 ; Newton vs. The State, 21 Fla., 53.

The third assignment of error is that the prisoner was not properly arraigned.

The record shows that on the 23d day of October, A. D. 1885, " the case was called, and the prisoner *was duly arraigned*, and upon his arraignment pleaded not guilty, whereupon, by agreement of counsel, it was ordered that the case be set down for Monday next." Again, in the record we find the following entry : "Whereupon, on the 23d day of October, in the year of our Lord 1885, the de-

fendant was arraigned, and the indictment in said cause was read to him, and the question was asked of him: 'Are you guilty, or not guilty?' to which he replied, 'not guilty.'"

This would seem to have been a good arraignment, and the counsel for the prisoner made no objection and took no exception at the time, but went to trial. It is too late now to say for the first time that he was not properly arraigned. Aside from this the counsel for the defendant, in his brief, says that on 23d October the case was called "and the indictment was read to the prisoner, who entered his plea of not guilty." We see no error in the arraignment. There is no other form in this State for the arraignment of a prisoner that we are aware of.

The fourth assignment of error is that the jurors who were put upon the prisoner were not properly sworn on their *voir dire*. The statute regulating the swearing of jurors on their *voir dire*, (McC.'s Digest, 446, §10,) reads as follows: "The court shall, on the motion of each party in any suit, examine on oath any person, who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudices therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection, and if it shall appear to the court that the juror does not stand indifferent in the cause, or is otherwise incompetent, another shall be called and placed in his stead for the trial of that cause." There is no particular form of oath prescribed by the law, whereas for jurors accepted in capital cases for the trial there is such particular form prescribed in the section (§10) immediately following it. The record shows that the oath administered to the jurors on their *voir dire* was as follows: "You and each of you, do solemnly swear you shall give to such questions as may be pro-

pounded to you, touching your competency as jurors, as shall be the truth, the whole truth, and nothing but the truth, so help you God." How or upon whose application the jurors were put upon their *voir dire* nowhere appears in the record, and no objection to the form of the oath appears anywhere, but it does appear that the jurors were accepted, duly sworn and tried the cause.

The fifth error assigned is the putting upon the prisoner as a competent juror, against objection, one W. W. Jackson.

Jackson was sworn on his *voir dire*, and stated that he had formed an opinion from what had been told him by Justice Friar, who said he was present at the preliminary trial of the defendant, and heard the evidence given in said trial, and told it to him. Counsel for the prisoner challenged the juror for cause. The court then asked the juror if the impressions that had been made on his mind by what he had heard would readily yield to the evidence on the trial, and he replied that they would. The juror was then peremptorily challenged by defendant, whose peremptory challenges were not exhausted when the empanelling of the jury was completed. There was no error in this judgment of the court. O'Connor vs. The State, 9 Fla., 215 ; Montague vs. The State, 17 Fla., 662 ; Andrews vs. The State, 21 Fla., 598.

The 6th error relied on is:

That there was no evidence from which the jury could find that the homicide was committed with a premeditated design to effect death.

The substance of the evidence on the part of the prosecution was as follows: Dr. Parramore testified that he was a physician, that he was called to see deceased and found him dead from gun shot wounds on the upper part of the breast. The wound caused instant death. Deceased

was lying on his back, his feet a little out of the gate. The defendant made a statement at the preliminary examination which this witness heard and repeated in his evidence as follows: "Defendant went on to state that he heard that day after dinner some scandalous reports that Tillis (the deceased) had circulated, and that he went to Mr. Perkins to go a fishing, and that Mr. P. was not at home. That he came by Tillis' and called him out to the gate and asked him if he had circulated those reports, and Tillis told him that he had. He told Tillis that he had lied, and told a lie. Tillis told him that if he called him a liar he would take out his knife and cut him. He then again told Tillis that he was a liar. Tillis then said if he called him a liar again he would go to the house and get his gun and shoot his head off. He called him a liar again, and Tillis took his foot off the fence as though to go to the house to get his gun, and that he knew that if Tillis got into the house he could shoot him from the house and he could not help himself, and he shot him." There is a public road 250 or 300 yards from the house and a private road passes the house leading to this public road. Defendant stated that he rode to the house, but did not state whether he was on horseback or on foot when he shot. From the gate to the house was between 20 and 25 yards. On this witness' cross-examination he said that the defendant said on such preliminary examination that Tillis had said certain defamatory things concerning defendant, and that Tillis acknowledged to him that he had said so. That George Ellis, his brother-in-law, informed him of that. That he heard this report after 12 o'clock noon. He told Ellis he would go and see Tillis and ask him about it. After leaving Perkins' he started for home and had to pass by Tillis' house. He thought as he rode by he would ask

43

Tillis about the report, and Tillis owned he did circulate the report   He then asked Tillis why he told such a thing, and Tillis told him because he wanted to, and then he told Tillis he was a liar.   Tillis then told him he must not call him a liar, and said if you do I will take a knife and cut your throat.   Defendant then told him again that he was a liar, and Tillis said I will get my gun and shoot your head off.   Tillis then took his foot off the fence as though he was going to the house, and then he shot him, fearing that Tillis would shoot him from the house.   Defendant did not go there with the intention of doing as he did, but when Tillis started to go to the house knew about his having a gun and did not know about his having sold it.

This witness further testified: "There was no path from the gate to the house, though you can see the place principally traveled.   The body was lying nearly straight from gate to the house.   The head out of that line four or five inches west.   No sign of turning.   The gate was slightly open."

Nancy Tillis testified: "I am the widow of Peter B. Tillis, and was at the house when he was killed.   Defendant rode to the gate and called Tillis.   Tillis asked defendant to get down and come in.   Defendant said he did not have time.   Tillis then went to him and was there a few minutes.   Defendant then shot him down and rode off.   It was about 4 o'clock P. M. when the gun fired.   I did not see defendant or Tillis then.   I was inside the house.   Defendant was outside the gate on his horse, and Tillis inside leaning against the fence.   Defendant had a gun.   Tillis had no arms on the place.   I went out when I heard the gun a few steps when I saw Tillis on his back, his feet against the gate and his head toward the house.   I went there in a minute.   Defendant was turning his horse to leave and

did not say anything. I heard no words between them. Tillis had no arms ; his knife was closed in his pocket."

John W. Perkins testified in substance that he went to see Tillis that afternoon. That Tillis was found dead just inside of the gate with his feet at the fence. There was no weapon about him. "I moved his feet a little, they were too close to the fence to straighten them ; I moved him about six inches ; part of the load had gone through ; his body was lying due north and south, and about straight and flat on his back. There were no signs of his having been turned."

This is the substance of the testimony. There were no witnesses offered for the defence. The court charged the jury fully upon the question of premeditation, and in the very language used by the counsel, in their request for such charge :

1st. That unless they find from the evidence that the killing was done by the prisoner and perpetrated with a premeditated design to effect the death of deceased, they cannot convict the prisoner of murder in the first degree.

2d. That the question of premeditation is a question of fact, and not of law, and like all other facts must be determined by the jury.

3d. They must be satisfied of the fact of premeditation by the evidence beyond a reasonable doubt. That no great length of time is necessary in which to premeditate the giving of a fatal blow. The question is not how long the premeditation had existed, but whether it did exist when the fatal act was done.

The charge was full and explicit, and was in no particular excepted to, and the jury found their verdict upon the evidence before them.

The question of premeditation was one of fact for the jury, and inasmuch as this cause will have to be retried

upon the decision of another alleged error, it would certainly be improper for this court to express an opinion upon the sufficiency of such evidence to establish premeditation.

The last assigned error is that "the indictment is fatally defective, in not following the words of the statute."

The charge as set out in the indictment is that the defendant, on a day at a place mentioned "in and upon one Peter B. Tillis then and there feloniously, wilfully and of his malice aforethought, did make an assault, and that he, the said Geo. W. L. Denham, a certain shot gun then and there charged with gunpowder, with divers leaden bullets to, against and upon the said Peter B. Tillis, then and there feloniously, wilfully and of his malice aforethought, did discharge and shoot off, * * * in and upon the breast of him, the said Peter B. Tillis, one mortal wound of the depth of eight inches, and of the breadth of six inches, of which said mortal wound the said Peter B. Tillis then and there instantly died." The indictment concludes by charging: "That the said Geo. W. L. Denham, the said Peter B. Tillis in manner and form aforesaid, then and there feloniously, wilfully and of his malice aforethought, did kill and murder against the form of the statute," &c.

No notice of this alleged defect was taken until the case came to this court. Objections to an indictment for defects apparent on the face should be taken by demurrer or motion to quash, or by motion in arrest of judgment.

Inasmuch, however, as this is a case highly penal, we will consider it. This court has decided in Ernest vs. The State, 20 Fla., 383; Savage & James vs. The State, 18 Fla., 909, that the question of premeditation is a fact for the jury. Our statute makes the premeditated intent to kill necessary to constitute murder in the first degree, and therefore the jury are compelled to find whether such pre-

meditation existed. It is claimed that such premeditation is a fact which must be alleged in the indictment for murder in the first degree, as it alone distinguishes that crime from murder in other degrees. Our statute, (McC.'s Digest, 350,) provides, "sec. 2, such killing [of a human being] when perpetrated from a premeditated design to effect the death of the person killed, or any human being, shall be murder in the first degree, and the person who shall be convicted of the same shall suffer the punishment of death. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, it shall be murder in the second degree, and shall be punished by imprisonment in the State penitentiary for life. When perpetrated without any design to effect death by a person engaged in the commission of any felony, it shall be murder in the third degree, and shall be punished by imprisonment in the State penitentiary not less than seven years." The crime of murder is thus by statute divided into three classes, murder in the first, second and third degrees, depending upon the facts and circumstances of each case. To warrant a conviction in the first, it must be premeditated, but in the two other degrees it may be without premeditation. Premeditation is what distinguishes it as murder in the first degree, and alone warrants a conviction punishable with death. Murder in this State is no longer a common law offence, but is a statutory one. The jury might have found the defendant guilty of murder in the second or third degree under this indictment. But the premeditation which was necessary under the statute to make it murder in the first degree was not charged. The defendant had a right to be informed of what crime he was charged. Of what was

he convicted? The verdict of the jury was as follows, as appears by the record :

" We, the jury, find the prisoner guilty, and recommend him to the mercy of the court.

"M. J. CHITTY, Foreman."

Of what did they find him guilty ? Their recommendation, as embodied in the verdict, is certainly not equivalent to saying guilty of murder in the first degree. The statute (Mc's. Digest, p. 448,) is as follows: "Sec. 18. In all criminal trials before the Circuit Court the jury, in addition to a verdict of guilty of any offence, may recommend any prisoner to the mercy of the court or to Executive clemency, and such recommendation may be entered of record or filed in writing * * *."

" Sec. 19. Whoever is convicted of a capital offence and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment in the State prison for life, with or without solitary confinement, at the discretion of the court."

The jury may have found the defendant guilty of murder in the second or third degree and made the recommendation under section 18. We said in Bird vs. The State, 18 Fla.: "That under our statute an indictment for murder which charges the crime according to the common law form would be good, for the reason that the allegation in such indictment would cover all the grades of that crime enumerated in the statute." In that case the indictment did charge the defendant " with a premeditated design to effect the death of said Joseph Nelson," &c., the word *with* being used instead of *from*. The point in that case was waived and no argument was had upon it and its decision was not necessary in the case. On this further careful examination of the question, we are satisfied that to distinguish murder in the first degree from that of the second and third

it must be charged in the language of the statute as being done "from a premeditated design." The terms "wilfully," "feloniously" and "malice aforethought" are applicable to all the degrees of murder, but under our statutes the words "from a premeditated design" alone distinguishes murder in the first degree. Had all those terms been inserted in the indictment the verdict of the jury as rendered would not have distinguished as between the several degrees. We think, therefore, that to distinguish murder in the first degree, from that of either of the other two degrees as designated in the statute, it must be charged in the indictment, in the language of the statute, as having been perpetrated "from a premeditated design to effect the death of the person killed."

The judgment is reversed and a new trial awarded.