188 So.2d 789 (1966)
Alfonso ROBLES, Appellant,
v.
STATE of Florida, Appellee.
No. 34679.
Supreme Court of Florida.
July 8, 1966.
*790 Donald F. Frost and Boyle & Boyle, Miami, for appellant.
Earl Faircloth, Atty. Gen., and John S. Burton, Asst. Atty. Gen., for appellee.
O'CONNELL, Justice.
Appellant was convicted of the crime of murder in the first degree without recommendation *791 of mercy and sentenced to die by electrocution. These appear to be the essential facts relating to the alleged crime: For about a year and a half, appellant had kept company with one Jean Sterne, a divorcee and mother of a daughter, aged fifteen, and son, aged thirteen. For some time, however, Mrs. Sterne had sought to terminate the relationship. During the night of the crime, appellant and Mrs. Sterne had several encounters in which she attempted to avoid appellant. Finally, in the early morning hours, he knocked at the door of her apartment and asked through the closed door if she would talk with him. She refused and asked him to leave. He claimed, and she denied, that she said that she was expecting another caller and did not wish him to find appellant at her door. In any event, appellant thereupon broke out some glass jalousies and gained entrance to the apartment. In the ensuing confusion, appellant repeatedly stabbed the daughter, Gayle, and Mrs. Sterne. Gayle died as a result of her wounds.
Appellant and Mrs. Stern related sharply divergent versions of the crime. Appellant's version is that he broke the glass with the heel of his shoe and that his only purpose in breaking into the apartment was to talk with Mrs. Sterne. He related that immediately upon entering the apartment he was attacked by Gayle, who was wielding a knife; that he first attempted to leave the apartment, but the door had been closed; that only then did he undertake to wrest the knife from Gayle. He admits remembering that she was cut in the course of the scuffle, but relates that his mind is a blank as to what happened thereafter. According to Mrs. Sterne's version, appellant entered the apartment by breaking the jalousies on the door and, immediately upon gaining admission, began slashing with the knife, first at Gayle and then at her.
In the course of the trial, certain damaging admissions, made while appellant was in police custody, were admitted without objection by defense counsel and without the trial court having conducted any preliminary examination out of the jury's presence as to whether they had been voluntarily made. The trial court did not instruct the jury to the effect that admissions made while in police custody should be received with caution, and it does not appear that defense counsel requested such instruction.
The issue of whether this homicide had been committed in the perpetration of or in the attempt to perpetrate the felony of burglary was first injected into the case by defense counsel's request for instructions defining "assault," "felonious intent," and "felony." This request was made at the conference for settling the charges to be given by the court. The prosecutor adverted to this theory in his closing argument, and the trial court included an instruction to the jury on the subject.
Appellant seeks to raise the following questions here: (1) whether this case presents a sufficient factual basis for application of the felony-murder rule; (2) whether the trial court adequately defined the felony-murder principle in its instructions to the jury; (3) whether the term "felony" was adequately defined in the instructions; (4) whether it was reversible error for the trial court to fail to conduct a preliminary examination, out of the presence of the jury, into the voluntariness of the abovedescribed admissions; (5) whether the trial court erred in failing to instruct the jury that admissions made while in police custody should be received with great caution, even though no such instruction was requested; (6) whether the trial court erred in permitting the prosecuting attorney to repeat a dying statement of the deceased girl which had been stricken during the trial as hearsay; (7) whether the trial court had erred in failing to instruct the jury to disregard certain hearsay testimony which had been testified to despite objection by defense counsel; and (8) whether certain statements made by the prosecutor during his closing arguments were so inflammatory as to deny appellant a fair trial. We shall *792 deal with these questions in the order listed.
The factual situation of this case is appropriate for application of the felony-murder rule. Sec. 782.04 F.S.A. provides that the unlawful killing of a human being shall be murder in the first degree and punishable by death in either of two circumstances; (1) "when perpetrated from a premeditated design to effect the death of the person killed or any human being * * *," or (2) "when committed in the perpetration of or in the attempt to perpetrate any * * * burglary * * *." It being presumed that such a statutory reference is to the statutory definition of burglary, it is appropriate to turn to Sec. 810.01 F.S.A., which provides,
"Whoever breaks and enters a dwelling house * * * with intent to commit a felony * * * shall be punished by imprisonment in the state prison for life, or for such term of years as may be determined by the court."
There is sufficient evidence in the record from which it could be concluded that appellant was guilty of the felony of burglary, in that he broke into the apartment with the intent to commit the felony of aggravated assault upon Mrs. Sterne. There is also ample evidence from which it could be found that he committed a homicide in the perpetration of such felony.
Appellant has directed our attention to a line of New York cases holding that the felony-murder rule does not apply unless the supporting felony is separate and independent from the homicide and he urges that their logic applies equally here. People v. Moran, 1927, 246 N.Y. 100, 158 N.E. 35; People v. Koslow, 1958, 6 A.D.2d 713, 174 N.Y.S.2d 709; People v. La Marca, 1957, 3 N.Y.2d 452, 165 N.Y.S.2d 753, 144 N.E.2d 420.
We disagree. As appellant acknowledges, the concern of the New York court, which was to preserve the integrity of the statutory degrees of homicide, resulted from the fact that the statute of that state makes a homicide committed in the perpetration of any felony first degree murder. New York Penal Code, McKinney's Consol.Laws, c. 40, § 1044. Since the phrase "any felony" is broad enough to include even the aggravated assault that is usually involved in any homicide, the result would be that substantially every homicide would constitute first degree murder.
It was to avoid this result that the New York court adopted the doctrine that the supporting felony had to be independent of the homicide. Even so, it should be noted that the New York court was not concerned with the situation in which the same act of violence that constituted the underlying felony also resulted in the homicide. It was held sufficient for application of the felony-murder rule if the underlying felony had some elements other than those contained in the crime of homicide. Thus, the court has held that the felony-murder rule applies when the underlying felony is, for example, rape, Buel v. People, 1879, 78 N.Y. 492, or kidnapping, People v. La Marca, 1957, 3 N.Y.2d 452, 165 N.Y.S.2d 753, 144 N.E.2d 420, since those crimes have some elements which are different from those of homicide.
It is obvious that the problem that motivated the New York court to adopt the above rule cannot exist under a statute like Florida's, which limits the felony-murder rule to homicides committed in the perpetration of specified felonies, not including assault in any of its forms. Therefore, the logic of the New York cases cited does not apply in Florida.
Questions (2) and (3) challenge the adequacy of the instructions to the jury and may appropriately be treated together. Actually, it appears from appellant's brief that only one new substantive question is raised under this heading  the adequacy of the court's instruction defining *793 the term "felony," as an element of burglary. We agree that this question is of basic importance.
It is beyond argument that the question whether appellant was guilty of statutory burglary constituted an essential part of the theory upon which the jury was instructed to decide defendant's guilt. As already remarked, Sec. 782.04 provides that an unlawful killing of a human being shall be first degree murder if it is either (1) perpetrated from a premeditated design to effect the death of the person killed or any human being, or (2) committed in the perpetration or attempt to perpetrate any one of certain listed felonies, including burglary. We have long held that an indictment for first degree murder is fatally defective if it fails to charge premeditation. Denham v. State, 1886, 22 Fla. 664. If premeditation is so vital a part of the crime of murder in the first degree, it must follow that the elements of the felony of burglary, which may be proved in lieu of premeditation, are equally vital and should therefore have been the subject of instructions to the jury. We are not prepared to say that the elements of the supporting felony under the felony-murder rule must be explained to the jury with the same particularity that would be required if burglary were the primary crime charged. Nevertheless, we do hold that they must be defined sufficiently to assure the accused a fair trial of the commission of the secondary crime as well as the primary one.
In the present case, the instructions relevant here consisted of the statutory definition of first degree murder, which includes the felony-murder rule, and then the following:
"The Court further instructs you that the gravamen of the offense of statutory burglary is the breaking into and entering of a dwelling house of another with the intent to commit a felony therein.
"It is not necessary for the State to prove premeditation where the death of the person killed is committed in the perpetration of, or in the attempt to perpetrate burglary. So that, if you find in the evidence, that the defendant killed Gayle Sherry Sterne while engaged in the commission of burglary, or the attempt to commit burglary, then the defendant should be adjudged guilty of murder in the first degree as the result of the perpetration of, or the attempt to perpetrate burglary."
If appellant were being tried for burglary, it could hardly be said that he could have a fair trial under these instructions. The jury is left to its own devices as to what constitutes breaking and entering and as to the character of the felonious intent that is required. As to the precise intent that appellant was alleged to have, these instructions fail to identify the felony that he allegedly intended to commit or even to define the term "felony," in the abstract. It is true that the court agreed to give such instructions and the defendant's trial counsel agreed to prepare same but failed to do so. But this failure of counsel does not relieve the court of the duty to give all charges necessary to a fair trial of the issues. We hold that since proof of these elements was necessary in order to convict appellant under the felony-murder rule, the court was obligated to instruct the jury concerning them, whether or not requested to do so. Canada v. State, Fla.App. 1962, 139 So.2d 753; Motley v. State, 1945, 155 Fla. 545, 20 So.2d 798; Croft v. State, 1935, 117 Fla. 832, 158 So. 454; 32 Fla. Jur. "Trial," Sec. 186. Referring to the sufficiency of indictments and informations, it is said in 13 Am.Jur. "Burglary," Sec. 36:
"In charging burglary a criminal intent must be alleged. The rule is well established, however, that even though in burglary and statutory housebreaking the intent, as defined by the law, is simply *794 to commit a felony, it is not sufficient for the indictment to use these general words; the particular felony intended must be specified. The allegation of the ulterior felony intended need not, however, be set out as fully and specifically as would be required in an indictment for the actual commission of that felony. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent to steal, or commit the crime of larceny, rape or arson. The word `felony' is a generic term employed to distinguish certain high crimes, as murder, robbery, and larceny, from other minor offenses known as misdemeanors. The averment that the accused has broken and entered a dwelling house for the purpose of committing a felony fails wholly to apprise him of the specific offense which it is claimed he intended to commit. The defendant is not to be oppressed by the introduction of evidence which he cannot be prepared to meet. Accordingly, failure to demur to an indictment which does not specify the requisite intent does not constitute a waiver of the right to raise the objection of a motion for a new trial on appeal, since the specific intent is an essential element of the crime."
It is equally, if not more, important that the jury be adequately instructed concerning the essential elements of the crime charged than it is that the elements be alleged in the indictment or information. And this is even more true when the burglary or other secondary crime is involved under the felony-murder rule than when it is the primary crime charged.
At this point we observe also that it does not appear that the trial court properly charged the jury that the presumption of innocence extended to the crime of burglary as well as to the crime of murder. As a matter of fact the court did not specifically instruct the jury on this presumption even as to the homicide. However, it did instruct that the "material allegations of the indictment" had to be proved to the exclusion of a reasonable doubt which probably suffices as an instruction on the presumption.
But the circumstances in this case indicate that a charge on the presumption should also have been given as to the crime of burglary. For one thing this secondary crime was not one of the material allegations of the indictment. Moreover, in another charge the court instructed the jury on the component elements of the crime charged, but did not include burglary or its elements. But in the charge earlier quoted, the court did charge that it was unnecessary to prove premeditation if the jury found defendant had killed in the commission, or attempted commission, of burglary.
In view of the manner in which the complicating issue of burglary was injected at the end of the trial and of defendant's trial counsel's failure either to prepare the charges he requested, as he agreed to do, as well as his failure to object to those given, it is easy to understand how the above errors were made. Yet this does not lessen the error. It is difficult to see how the jury could have known from the instructions given that guilt of burglary was an essential element of the crime of first degree murder, as charged, and that the extraordinary burden of proof and presumption of innocence applied also to this secondary crime.
Appellant's fourth question is whether the trial court erred in failing to conduct an independent inquiry, out of the presence of the jury, into the voluntariness of the damaging admissions made by appellant while in police custody. In the instant case the defendant made no objection to the introduction of the admissions, did not request an out-of-jury inquiry, and does not contend that the admissions were involuntary. *795 Mere failure to follow the recommended and safer course of an independent inquiry out of the jury's presence is not in itself reversible error. Espinola v. State, Fla. 1955, 82 So.2d 601. The reason for such an independent inquiry is to prevent harmful error and to avoid the necessity for declaring a mistrial if it be determined that the admissions should not be admitted after the jury has heard them. Hearn v. State, Fla. 1951, 54 So.2d 651.
Appellant's fifth question is likewise without merit. In this one he argues that the trial judge erred in failing to instruct the jury that admissions given while in police custody should be received with caution. Such an instruction should have been given. However, it is not reversible error to fail to do so when there is other adequate evidence before the jury which, if believed, would justify the conviction. Hamilton v. State, Fla. 1956, 88 So.2d 606. There is in the record adequate evidence to sustain this conviction without reliance on the admissions.
Because the errors alleged in the other questions are not likely to recur on retrial it is unnecessary to answer them now.
For the reasons above expressed the judgment and sentence are reversed and the cause is remanded for new trial.
THORNAL, C.J., and THOMAS, ROBERTS, CALDWELL and ERVIN, JJ., concur.
MASON, Circuit Judge, concurs specially.
MASON, Circuit Judge (concurring specially).
I would reverse solely because of the trial court's failure to charge that the defendant is presumed to be innocent until proven guilty by the State to the exclusion of reasonable doubt.