PIERCE, Chief Judge.
Appellant Kenneth Ray Wright appeals to this Court from a judgment of conviction pursuant to an adverse jury verdict entered against him of first degree murder with recommendation of mercy and a sentence to life imprisonment.
Wright was indicted in Orange County but venue was later changed to Lee County where in due course trial was held before a jury, culminating in the result aforesaid. Numerous motions, documents, and other pre-trial pleadings were filed and numerous hearings held, both in the Orange County Circuit Court before removal and later in the Lee County Circuit Court after removal. At the trial voluminous testimony was taken. The State’s case was built upon circumstantial evidence, and it is obvious from the cold record certified here that deep, intense feeling was engendered on the ultimate issue of guilt or innocence.
The victim, Camellia Jo Hand, aged 8 years, disappeared on Thursday, April 10th, 1969, between 7 A.M. and 8:30 A.M. while walking from her home to school, and was presumably kidnapped and murdered. Two days later, on Saturday afternoon, April 12th, her body was discovered and dug up from a shallow grave not far from where she disappeared, clad only in shoes and socks. Assorted items of clothing and other articles had been buried with her. Numerous stab wounds, abrasions, wounds and fractures were found on her body, and there was some evidence of a sexual molestation. The cause of the death was a brain hemorrhage from blows to the head from a blunt instrument. The body of her pet dog, who was following her to school, was found a short distance away from where her body was buried.
It would serve no useful purpose to discuss the evidence as a whole that was adduced at the trial, and indeed it might, in *335 view of our disposition of the appeal here, be unwise and detrimental. Only so much of the evidence as pertains to the points dispositive of this appeal will be alluded to.
A total of seventy-seven assignments of error were filed notwithstanding the many admonitions of the Supreme Court in previous cases against such a multiplicity of assignments. The record discloses two trial errors, each of which was prejudicial to a fair trial and which require reversal of the judgment appealed. They are (1) admission into evidence of three colored photographs, and (2) failure of the trial Court to define for the jury the essential elements of all the felonies involved in the charge of felony-murder. We pretermit discussion of the remaining assignments of error, none of which we find reversible. We will discuss the two crucial points of reversal seriatim.
(1) The Prejudicial Color Photographs.
Several photographs, 8 in number, and all in color, were admitted in evidence over objection. Three of the photographs, identified as State’s Exhibits Nos. 26, 27 and 28, were grossly inflammatory and unnecessary to explain or elucidate any portion of the State’s case, and therefore were erroneously admitted.
Exhibit No. 26 depicts the nude body of the victim at the gravesite but in a different position than when her body was found. When first discovered she was on her stomach with her head and body bent over and facing downward, and there is an unobjectionable picture to show this. Exhibit No. 26 shows her body facing in an upright position but with her head pulled up and back, showing the face and upper part of her body from the front.
Exhibit No. 27 was taken at the morgue after removal of the body from the grave and shows a deep stab wound on the left top side of the head, another wound in the left chest, and other lacerations in the abdominal area.
Exhibit No. 28, also taken at the morgue, shows Camellia Jo laid out on her right side in a horizontal position, taken from the rear, showing several stab wounds in the back and a deep, gashing type wound in her upper buttocks.
All three of these color photos were frightful and shocking. The question here is, were they proper to be admitted? And we hasten to observe that, in making that determination, we are not trying to second-guess the trial Judge because we are not dealing with a factual question. There is no dispute as to the condition of the body when found or the location or extent of the wounds. We are dealing only with a question of law as to whether or not, under all the admitted facts and circumstances present in the case, gauged by the applicable legal principles involved, it was proper to admit these pictures in evidence. We do not think so and in allowing them we think the trial Court was in error to a reversal.
In Albritton v. State, Fla.App.1969, 221 So.2d 192, this Court endeavored to lay down the basic ground rules governing the admission of such pictorial evidence according to our understanding of the existing case law.
Albritton involved the death of a sixteen months old girl child named Stacie, a stepdaughter of the defendant Albritton. He was tried and convicted of second degree murder. The State contended at trial that Stacie’s death resulted from persistent and brutal beatings and other physical abuse administered to the child by Albritton during the short period of time her mother was living with him. Numerous witnesses for the State gave eye witness accounts of such ill-treatment. Albritton’s defense, and he so testified, supported by the child’s mother whom he had married in the interim, was that Stacie got the bruises, burns and lacerations on her body from various other sources, such as falling from a truck at a “Quarter Horse Show”, an inadvertent contact with a heated hair dryer be *336 longing to her mother, picking up a lighted cigarette, falling from a dining room shelf, etc. There was thus a factual issue directly involved, the resolution of which would guide the jury’s verdict as to guilt or innocence. This Court in Albritton, after briefly summarizing the evidence bearing upon the conflicting contentions of the parties, said (text 221 So.2d 195) :
“In such setting of testimonial conflict between the numerous State witnesses on the one hand and Albrittpjj and his wife Michele on the other, the admissibility of the photographs of the child taken in the hospital comes into clear focus. And it is in such posture of evidence that the propriety of admission of the photographs must be judged.
******
The fact that the photos were inflammatory and such as would arouse to passion is not alone sufficient to warrant their refusal in evidence. Gragg v. State, Fla.App.1965, 177 So.2d 59; Cullaro v. State, Fla.App.1957, 97 So.2d 40; Pleas v. State, Fla.1966, 184 So.2d 647; Calloway v. State, Fla.1966, 189 So.2d 617. But where admittedly gruesome and reasonably calculated to inflame the minds of the jurors, they can only be admissible by a showing of the prosecution that, not only are the pictures relevant, but also that they are demonstrably material in reconciling or tending to reconcile, some disputed fact in evidence directly pertinent to the charge being tried. [Cases cited.]
* * * * * *
If the wounds, bruises and burns on her body, as she lay in the hospital just before her death, were many and aggravated, such as would result from beatings and other physical mistreatment at the hands of Albritton, the charge of second degree murder was made out. If, on the other hand, the bruises, etc., were relatively minor and slight, such as might result from a fall a week before from a truck, or an indoor fall from some wall shelving or burns from a hair dryer, essentially accidental in nature, the charge would not be made out. The location, extent, degree, and severity of the bruises and burns would have a direct bearing in resolving the issue.”
We upheld the introduction of the pictures in evidence in Albritton but we were particular to point out—
“But let us pause to emphasize one thing: if the pictures had not had such a direct bearing upon this most vital issue in the case, in addition to being merely relevant, we would have no hesitation in reversing the conviction. This is so because, while the inflammatory character of pictorial evidence is not sufficient of itself to warrant rejection as evidence, yet where such exhibits though technically relevant throw no light in resolving a material issue of fact, it lacks the necessary evidentiary prerequisite to warrant admission.
We think the sound and logical rule for admissibility is that if the pictorial evidence is not so inflammatory or gruesome as reasonably to prejudice the minds of the jury, the evidence is admissible provided it is relevant to any issue. But if such exhibit is so inflammatory and repulsive as would reasonably produce a prejudicial and exceedingly harmful effect on an otherwise impartial mind, it would not be admissible unless it would throw light upon a vital issue in the case and resolve, or reasonably tend to resolve, a conflict in evidence upon such vital issue.” (Italics in text.)
Thus we held that the photographs were properly received in evidence in Albritton under the carefully charted rules of admissibility set forth. In several other cases photographs have been held properly admitted using substantially the same guidelines. Reed v. State, Fla.App.1969, 224 So.2d 364; Furr v. State, Fla.App.1969, 229 So.2d 269; Jackson v. State, Fla.App.1970, 231 So.2d 839; Williams v. State, Fla.1969, 228 So.2d 377; Blake v. State, *337 Fla.1963, 156 So.2d 511; Brooks v. State, Fla.1960, 117 So.2d 482 and Lindberg v. State, 1938, 134 Fla. 786, 184 So. 662. But as stated by the Supreme Court in Blake, quoting from Lindberg, the Courts are particular to point out that “ * * * in a homicide case photographs should serve to illustrate, explain or clarify any issue or conflict in the evidence and if they do not do this, they should be disallowed”; also in Brooks, “photographs of the type involved here should be received in evidence with great caution and should not be permitted unless they prove or tend to prove some material issue in the trial of the cause”. And in several cases the Courts have held the introduction of such photographs to be reversible error. Dyken v. State, Fla.1956, 89 So.2d 866; Reddish v. State, Fla.1964, 167 So.2d 858; Young v. State, Fla.1970, 234 So.2d 341, and Saxon v. State, Fla.App.1969, 225 So.2d 925.
Relating the rationale of Albritton and the other cited cases to the admitted facts in the instant case, we are of the view that while the photographic Exhibits 26, 27 and 28 may have been technically relevant they were so inflammatory and gruesome in character and so totally devoid of any “direct bearing upon the most vital issue in the case” as to warrant their rejection as evidence.
What was “the most vital issue in the case?” It was not the location or extent of the multiple stab wounds or the skull-crushing blow to the head, or the sadistic ripping open of the vital organs of the body, or the horrifying burial face down of the nude body. We repeat again — what was the real factual issue in the case, the one upon which the jury’s verdict must perforce have rested? It is to be put simply : Was Kenneth Ray Wright the person who murdered Camellia Jo Hand? Did the evidence sufficiently identify Wright as the murderer ?
As hereinbefore mentioned, the case of the prosecution consisted solely of circumstantial evidence. The State sought to prove Wright’s guilt by facts and circumstances so conclusive that they would not only be consistent with guilt but inconsistent with innocence and would exclude any reasonable hypothesis except that of guilt. To carry such burden, the State relied upon a partial, smudged print of a left index finger on a razor blade found lying several feet from the gravesite on top of the ground, also a many colored skirt found near the body the source of which, at least as evidence against Wright, was to some extent shrouded in doubt.
But be that as it may, the photographs in question did not prove, or tend to prove, the identity of defendant Wright as being the perpetrator of the crime. The indictment charged first degree murder both by premeditation and in commission of a felony. The bald facts aliunde the challenged pictures showed conclusively an unlawful homicide under either charge. But whether there was 1 or 100 stab wounds on the body, or 1 or 100 bone-crushing blows on the head, or 1 or 100 cuts and gashes in other vital portions of the body, it would not prove that the hand that wielded such stab wounds, cuts and blows was that of Wright. However, the prejudicial gruesomeness of the pictures would remain indelibly in the minds of the jurors.
Dr. Thomas E. Hegert, the official Orange County Medical Examiner for the past 14 years, testified that in his examination and report concerning the homicide he used other means such as charts “rather than pictures” to explain his findings and examinations; that as to “the location of the wounds and the dimensions of the wounds, I would better explain by my diagrams”. Asked if the pictures were “necessary for you to explain your findings to the jury?” he replied, “No they are not necessary”.
We hold that the admission of the photographs in question was prejudicial error.
(2) Failure of the Court to Charge the Jury upon the Essential Elements of the Felonies which.Might Have Been Involved.
*338 F.S. Section 782.04 F.S.A. defines first degree murder as—
“The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed * * * or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping, * * * ”
It will be observed that it is divided into two classifications, first, when perpetrated from a premeditated design to effect the death of the person killed, commonly called “premeditated murder”, and second, when committed in the perpetration or the attempt to perpetrate any of the named felonies, arson, rape, robbery, burglary, etc., commonly known as “felony-murder”. The indictment here charged first degree murder under both classifications, viz: “from a premeditated design to effect the death of Camellia Jo Hand” and also “by striking her on the head with a blunt instrument”.
We are not here concerned with the premeditation feature. We are concerned only with the felony-murder feature. After all the evidence was in and the usual conferences held between the Court and respective counsel concerning the jury instructions to be given or refused, defense counsel called to the attention of the Court that, as to the felony-murder part of the indictment, the instructions should define the ingredients contained in the felonies involved. However, the Court failed or refused to charge the jury the various elements going to make up these substantive felony offenses. As to such offenses, the jury was instructed merely in terms of the statute, except as to rape and a brief reference to one isolated phase of crime against nature.
So the question is whether it is incumbent upon the trial Court, upon request in a felony-murder prosecution, to charge the jury upon the specific ingredients making up each permissible felony under the evidence. The State argues that the trial Court’s charge to the jury was sufficient. Defense counsel contend that the elements of each possible felony permissible of conviction under the evidence should have been given the jury. We agree with the latter contention and hold that the failure to so charge was reversible error.
The principle involved here is well established. Corpus Juris Secundum and Florida Jurisprudence, are specific on the point, supported by a whole compendium of cases. In 41 C.J.S. Homicide § 361, beginning on page 137, it is said that—
“Where a homicide is perpetrated in the commission of another offense, and is for that reason murder, * * * an instruction defining the law applicable to such a state of facts may and should be given. An instruction as to a collateral offense should properly define and explain the other offense involved, * * * >’
In 16 Florida Jurisprudence, § 175, beginning on page 518, the text writer says:
“Since the grade or degree of culpable homicide is dependent on the evidence, it is the duty of the trial court to instruct the jury on the grade of homicide * * *, of which the defendant may be found guilty.
* * * * * *
In cases involving homicide in the perpetration of, or in the attempt to perpetrate, any of the felonies named in the statute defining murder in the first degree it is necessary to charge the jury on all degrees of unlawful homicide. Where the accused is prosecuted under an indictment charging murder with premeditated design to effect death, the trial court should charge on all degrees of unlawful homicide, regardless of whether the evidence establishes that the homicide in question was committed from premeditated design to effect death, or in the perpetration of, or in the attempt *339 to perpetrate, any of the designated felonies, or as a result of a combination of both means.”
Our Supreme Court in a long line of cases, has approved the giving of instructions setting forth the elements of the felonies involved in a felony-murder prosecution. Lewis v. State, 1927, 93 Fla. 207, 111 So. 628; Leavine v. State, 1933, 109 Fla. 447, 147 So. 897; Goddard v. State, 1940, 143 Fla. 28, 196 So. 596; Campbell v. State, Fla.1969, 227 So.2d 873; Robles v. State, Fla.1966, 188 So.2d 789; Coppolino v. State, Fla.App.1969, 223 So.2d 68; Bailey v. State, Fla.1969, 224 So.2d 296; and State v. Barnes, Fla.App.1966, 182 So.2d 260.
In Robles the case, as here, was submitted to the jury on a two-fold theory of premeditated murder and also felony-murder. The particular felony involved in Robles was burglary, but the same legal principles apply to other named felonies. We quote from the Supreme Court’s opinion in Robles, beginning on page 793, because it seems to be conclusive of the point under consideration:
“It is beyond argument that the question whether appellant was guilty of statutory burglary constituted an essential part of the theory upon which the jury was instructed to decide defendant’s guilt. * * * We have long held that an indictment for first degree murder is fatally defective if it fails to charge premeditation. Denham v. State, 1886, 22 Fla. 664. If premeditation is so vital a part of the crime of murder in the first degree, it must follow that the elements of the felony of burglary, which may be proved in lieu of premeditation, are equally vital and should therefore have been the subject of instructions to the jury. We are not prepared to say that the elements of the supporting felony under the felony-murder rule must be explained to the jury with the same particularity that would be required if burglary were the primary crime charged.
Nevertheless, we do hold that they must be defined sufficiently to assure the accused a fair trial of the commission of the secondary crime as well as the primary one.
In the present case, the instructions relevant here consisted of the statutory definition of first degree murder, which includes the felony-murder rule, and then the following:
‘The Court further instructs you that the gravamen of the offense of statutory burglary is the breaking into and entering of a dwelling house of another with the intent to commit a felony therein.
‘It is not necessary for the State to prove premeditation where the death of the person killed is committed in the perpetration of, or in the attempt to perpetrate burglary. So that, if you find in the evidence, that the defendant killed Gayle Sherry Sterne while engaged in the commission of burglary, or the attempt to commit burglary, then the defendant should be adjudged guilty of murder in the first degree as the result of the perpetration of, or the attempt to perpetrate burglary.’
If appellant were being tried for burglary, it could hardly be said that he could have a fair trial under these instructions. The jury is left to its own devices as to what constitutes breaking and entering and as to the character of the felonious intent that is required. As to the precise intent that appellant was alleged to have, these instructions fail to identify the felony that he allegedly intended to commit or even to define the term ‘felony,’ in the abstract. It is true that the court agreed to give such instructions and the defendant’s trial counsel agreed to prepare same but failed to do so. But this failure of counsel does not relieve the court of the duty to give all charges necessary to a fair trial of the issues. We hold that since proof of these elements *340 was necessary in order to convict appellant under the felony-murder rule, the court was obligated to instruct the jury concerning them, whether or not requested to do so. Canada v. State, Fla.App.1962, 139 So.2d 753; Motley v. State, 1945, 155 Fla. 545, 20 So.2d 798; Croft v. State, 1935, 117 Fla. 832, 158 So. 454. * * *
It is equally, if not more, important that the jury be adequately instructed concerning the essential elements of the crime charged than it is that the elements be alleged in the indictment or information. And this is even more true when the burglary or other secondary crime is involved under the felony-murder rule than when it is the primary crime charged.” (Emphasis supplied.)
In Coppolino where first degree murder was charged as a result of deliberate use of drugs or poison, and even though the defense claimed it was logically impossible for the jury to find second-degree murder from the evidence and that such instructions as to second-degree and third-degree murder and manslaughter invited a compromise verdict, instructions on the latter offenses were held proper by the Supreme Court regardless of the accusation and the proofs.
In Bailey the Supreme Court held that where the indictment charged first degree murder and also assault with intent to commit first degree murder, the trial Court would be in error if it refused to grant the defendant’s request for instructions on third degree murder, notwithstanding the elements thereof were not included in the specific allegations of the indictment.
In Barnes it was held that an accused charged with an offense divided into degrees is entitled to have the jury charged as to all degrees of the offense, notwithstanding there is no evidence presented as to the lesser degrees of the crime.
Every felony contains ingredients peculiar to that particular offense, some by statute, some by common law, and some by both. For instance, the abominable and detestable crime against nature is composed of both common law and statutory ingredients. Thus, while F.S. § 800.01 F.S.A. statutorily defines the offense in general terms as “whoever commits the abominable and detestable crime against nature, either with mankind or with a beast”, the crime is also punishable according to the common law ingredients, as well as by those set forth in the statute, or by a combination of the two. Ephraim v. State, 1921, 82 Fla. 93, 89 So. 344; Jackson v. State, 1922, 84 Fla. 646, 94 So. 505; Lason v. State, 1943, 152 Fla. 440, 12 So.2d 305; Delaney v. State, Fla.1966, 190 So.2d 578; Swain v. State, Fla.App.1965, 172 So.2d 3; Bivins v. State, Fla.App.1968, 208 So.2d 666. The trial Court here charged in general terms that crime against nature includes copulation between human beings per anum, but a detailed, inclusive charge covering all the ingredients of such offense, as required in Robles, was not given.
The Court made no attempt to set forth the ingredients of robbery, although the evidence would have warranted a verdict of guilt of robbery-murder. See F.S. § 813.011 F.S.A. as to robbery. Arnold v. State, Fla.1955, 83 So.2d 105; Wilson v. State, 1945, 155 Fla. 511, 20 So.2d 673; Taylor v. State, 1939, 138 Fla. 762, 190 So. 262; Croft v. State, 1935, 117 Fla. 832, 158 So. 454; Wood v. State, 1929, 98 Fla. 703, 124 So. 44; Stephens v. State, 1926, 92 Fla. 43, 109 So. 303; Montsdoca v. State, 1922, 84 Fla. 82, 93 So. 157; 27 A.L.R. 1291; Bailey v. State, Fla.App.1967, 199 So.2d 726; Hand v. State, Fla.1967, 199 So.2d 100; Brown v. State, Fla.App.1966, 191 So.2d 296.
The same as to the felony of kidnapping, which is statutorily defined in F.S. § 805.-01 F.S.A. as illegally confining or imprisoning another person within the State, or confining or inveigling another person, with such intent. Wilkes v. State, Fla.App.1966, 182 So.2d 480; Miller v. State, Fla.App.1970, 233 So.2d 448. Also see 51 C.J.S. Kidnapping § 1 b., p. 493.
*341 Our holding that it was error for the trial Court to fail to define the elements of these possibly-applicable felonies is supported by reason and logic. If the jury must be instructed that it is first degree murder for a person to kill another while perpetrating or attempting to perpetrate, either of several named felonies, then it would seem to be academic that each of the possible felonies involved should be specifically dealt with in the charge to the jury, as to the ingredients involved, the elements, constituents, components, etc. How else would the jury know that the homicide occurred in the commission of or attempting to commit the particular felony? The fact that the homicide occurred at the hands of another person in an unlawful endeavor, however revolting or homicidal, would not be enough unless all the essential elements of the particular felonies involved would be given to the jury.
Other errors assigned are either without merit, without applicability, without reversible prejudice, or not likely to arise in another trial.
For the errors pointed out, the judgment of conviction appealed is
Reversed.
LILES and MANN, JJ., concur.