RAWLS, Chief Judge.
James Wilkes was informed against, tried by a jury, and found guilty of committing the following crimes, viz.: That he did “ * * * then and there without lawful authority forcibly and secretly confine and imprison another person, to-wit: BETSY N. * * * within Duval County, Florida against her will, with intent to cause her to be secretly confined or imprisoned in this State against her will.” The other count was in the same words except that it charged him with committing the identical offense against Susan M. He now appeals from a judgment and conviction as to each of the foregoing counts.
Colloquially speaking, Wilkes and his brother Ralph were charged, tried and convicted of the crime of kidnapping without seeking ransom. (Ralph is not a party to this appeal.) Essential testimony presented by the State prior to resting its case, is as follows: Four Jacksonville teenagers, two girls and two boys, with their parents’ consent, went to the beach in St. Johns County at a point close to the Duval County line where they first watched some fishermen pull in a shark and then strolled up the beach at approximately 9:15 p. m. At this time Appellant James Wilkes, accompanied by his brother Ralph, approached the teenagers, and representing themselves to be deputy sheriffs of St. Johns County, advised the teenagers that they were under suspicion for robbery of a service station and they were taking them to the juvenile shelter. Although each of the Wilkes brothers carried a billy club and Ralph wore a holster and pistol, the boys’ demands for identification were refused by the Wilkes brothers with such statements as, “Listen boys, I have had enough sass out of you. If you don’t be quiet I am going to hit you and not with the end of my fist.”
Considerable testimony was adduced showing that the Wilkes brothers maneuvered the young girls into their car and directed the boys to drive ahead of them in their (the boys’) car to the juvenile shelter. The brothers then passed the boys, forced them to speed in order to keep pace, and then “arrested” them for speeding. Thereafter one of the boys was permitted to ride with the girls but the other boy was sent to get all the parents with the instruction to meet them at the juvenile shelter. Shortly thereafter the Wilkes brothers changed their minds and decided to take the two girls and the other boy to Judge Tuten’s house. Judge Tuten is a Justice of the Peace. They then drove by a house, presumably Judge Tuten’s home, and observed: “ * * * he’s not here. Doesn’t look like anyone’s home. Let’s go and see if he’s at his brother’s fish camp.” The defendant and his brother then drove a considerable distance through isolated country. Eventually they arrived at a deserted fishing camp, broke into a cabin, took the girls inside, but left the boy in the car. The boy went for help. When the two brothers made advances toward the girls in the dark cabin, the girls ran, hid in the woods, and after walking for miles, hiding as cars would come down the road and at one time losing their way, they finally reached a vil *482 la ge store where they telephoned their parents and the police.
It is upon these basic facts adduced by the State that the defendant presents what we deem to be the main point on appeal, that being: Did the trial court err in refusing to grant defendant’s motion for directed verdict at the close of the State’s case on the ground that the State failed to prove that the girls were secretly confined under Section 805.01, Florida Statutes, F.S.A. ?
The defendant contends that the State’s evidence cannot sustain a jury’s finding that he intended to confine either girl secretly and cites as his authority Holroyd v. State, 127 Fla. 152, 172 So. 700 (1937), and Barber v. State, 13 Fla. 675 (1871).
In Holroyd the evidence showed that the defendant had been charged with substantially the same offense as the one which we are here concerned. The facts in Holroyd reveal that the defendant, while in an intoxicated condition, went publicly to a place where one Brewton was working, and in the presence of several people forced Brewton to get into an automobile, told Brewton that he was going to take him to his (defendant’s) home where he would consult with his (defendant’s) wife, and threatened to kill Brewton. After carrying Brew-ton to his home, the defendant surrendered his gun to his wife and agreed to release Brewton. About that time police officers, having been notified by those who witnessed the abduction, arrived on the scene. The Supreme Court, after noting Holroyd’s version of the matter “that he was so highly intoxicated when the occurrence happened that he had no recollection of any of the facts regarding same”, concluded that the proof failed to meet the allegations of the information and reversed the judgment. The facts in the two cases are obviously distinguishable. In the instant case the evidence sustains a finding by the trial judge that the state made a prima facie case reflecting adequate proof from which the jury could find a continuing intent on the part of this defendant to forcibly remove these two girls to an isolated locale and to hold them there against their will. Defendant contends that the verbiage “secretly confined” as set out in the statute must be construed to mean that no one else knows where the person abducted is to be carried, and since one of these boys knew where these girls had been taken, such fact dissipates the accusation. We conclude that such a construction would be contrary to the intent of the cited statute. It may well be that the boy knew that these two girls were located in a deserted fishing camp and were being held against their will in some isolated area, but such knowledge does not conform with the conclusion that they were not secretly confined. To hold that the releasing of the boy by those who had abducted him in the middle of the night and who were still restraining two young girls in a dark deserted cabin located in an area of which neither the boy nor the girls had any knowledge precludes a finding that the girls were “secretly confined,” would be placing a strained construction upon the obvious prohibition intended by the legislature.
Defendant next asserts that the State did not prove that this confinement was without lawful authority in that it never did prove that either of these defendants was not in fact a deputy sheriff. Such assertion can be disposed of quickly by observing that the facts of this case — i. e., taking these children into custody, transporting them up and down the highway from one place to another and finally to a deserted fishing camp, breaking into a cabin and forcibly requiring the two young girls to enter into a dark cabin — would support a conviction of this defendant had he been a deputy sheriff, sheriff, or any other type officer possessing a badge. It was not necessary under the facts of this case for the State to prove that this defendant was not a law enforcement officer.
Defendant’s next contention is that the State failed to prove that the crime was committed in Duval County. The record reveals that one of the officers positively *483 located and marked the fishing camp as being located on an official map in Duval County. This testimony alone disposes of this contention.
The remaining point made by the defendant is that the trial judge erred in permitting testimony as to advances made by one defendant to one of the girls in the dark cabin. Such evidence was relevant toward proving the intent of the defendant in secretly confining and imprisoning these girls against their will.
Affirmed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.