RAWLS, Judge.
Robert L. Miller, defendant below, appeals from a verdict and judgment of guilty of kidnapping.
Appellant’s sole point on appeal is stated as: Did the trial court err in overruling the defendant’s motions for directed verdict?
Appellant contends that he is now serving the longest sentence for drunkenness in the history of the State of Florida because *449 (1) there was no proof by the State of his intent to secretly confine or imprison the victim, and (2) the uncontradicted evidence is that there was no actual confinement or imprisonment. We must of necessity delve into the material facts construed in a light most favorable to the State in order to pass upon appellant’s contentions.
The State presented the following essential facts: Robert L. Miller had lived in Panama City, Florida, for approximately six months in the year 1960, and had dated a woman residing at that time on Bob Sikes Drive. On November 17, 1966, while on his way from New Jersey to California, Miller stopped in Panama City, made inquiry but was unable to locate his former girl friend. On November 19, 1966, about 6:30 or 7:00 p. m. (it being fairly dark about that time), three children were walking, with their mother’s consent, from their home on Bob Sikes Drive to a Junior Store located about two blocks away to get a soft drink for the youngest child, 7-year-old Rosemary. Miller was driving along Bob Sikes Drive at this time and invited the children to ride with him in his automobile. The three children accepted the invitation, all sitting in the front seat with Rosemary seated next to the driver. Miller stopped at the Junior Store, let the children buy the drink, and with the children in the car drove across the street to a service station. There he filled his car with gas, sent one of the boys home with the soft drink and some trading stamps, drove back across the street to the grocery store, gave the remaining boy a dollar to go in and get some more drinks, and told Rosemary to stay in the car with him while he turned around. When the first boy arrived at home with the stamps and advised his mother that a man picked them up and gave the stamps to him, his mother walked toward the grocery store searching for Rosemary. As the mother was returning to the house, she met her husband and advised him that Rosemary was not with the boys. The two of them immediately went to the sheriff’s office and reported Rosemary missing. The parents did not see their daughter until approximately 12:30 the following morning in the sheriff’s office.
The description of Miller’s automobile had been broadcast by the dispatcher and an officer testified that at approximately 11:30 p. m. the car was spotted at least two miles from Bob Sikes Drive when it pulled out in front of them in the vicinity of the 3500-block on West Highway 98. The officers pulled the car over, searched the defendant, removed a revolver from his person, and found Rosemary lying on the front seat of the car with a “bandana thing around her head, or a scarf.” As to defendant’s physical condition at this time, the officers testified that he had driven for about one-half block prior to their stopping him, and there was nothing unusual in the manner in which he was driving the car, that he was fairly dressed, apparently had been drinking but wasn’t intoxicated, and that he talked all right and walked all right. The service station attendant who had filled Miller’s car with gas about 7:00 p. m. testified that the children remained in the automobile while he was servicing it, and Miller “sat there like a normal person.”
Rosemary was called as a witness for the State, but when she stated that she didn’t know what was meant by swearing on the Bible, she was not allowed to testify. This ruling has not been challenged by appellant.
After adducing the foregoing basic testimony, the State rested. The defendant at that time moved for a directed verdict for acquittal upon the grounds that the State had proved no force and that there was no proof that Miller did kidnap Rosemary with intent to cause her to be secretly confined against her will.
It is at this stage of the proceedings that appellant’s motion for directed verdict of acquittal must be tested, or, stated in another way, Was the evidence adduced by the State susceptible of proving the essential elements of the crime charged including the two specific elements (intent and secret confinement) challenged by appellant on this appeal? Intent to secretly *450 confine or imprison must be both charged and proved. Ross v. State, 15 Fla. 55 (1875), and Holroyd v. State, 127 Fla. 152, 172 So. 700 (1937). In Wilkes v. State, 182 So.2d 480 (Fla.App.lst 1966), this Court in construing the challenged elements of the crime recited the following:
“In the instant case the evidence sustains a finding by the trial judge that the state made a prima facie case reflecting adequate proof from which the jury could find a continuing intent on the part of this defendant to forcibly remove these two girls to an isolated locale and to hold them there against their will. Defendant contends that the verbiage ‘secretly confined’ as set out in the statute must be construed to mean that no one else knows where the person abducted is to be carried, and since one of these boys knew where these girls had been taken, such fact dissipates the accusation. We conclude that such a construction would be contrary to the intent of the cited statute. It may well be that the boy knew that these two girls were located in a deserted fishing camp and were being held against their will in some isolated area, but such knowledge does not conform with the conclusion that they were not secretly confined. To hold that the releasing of the boy by those who had abducted him in the middle of the night and who were still restraining two young girls in a dark deserted cabin located in an area of which neither the boy nor the girls had any knowledge precludes a finding that the girls were ‘secretly confined,’ would be placing a strained construction upon the obvious prohibition intended by the legislature.”
See also 3 Fla. Words and Phrases, 1967 P.P. page 69.
[2] Reverting to the instant case, the State proved that the defendant, who was unknown to the child, lured this girl of tender years into his automobile and kept her with him, insofar as her parents or anyone else knew, in a place or places unknown for a period of at least four hours during the nighttime. The facts recited above constitute ample circumstantial evidence to support the court’s action in submitting to the jury the question of defendant’s intent to secretly confine or imprison the child.
[3] By his testimony defendant insists that the uncontradicted evidence was that there was no actual confinement or imprisonment. He testified that he took the child to three places—all public—the grocery store, service station and a motel which was his place of residence, that being at least two miles distant from her home. He further insists that she was not forced to go or stay with him. The jury was at liberty to believe or reject any part or all of defendant’s testimony. It is significant that there isn’t one scintilla of corroborating evidence to defendant’s version as to what he did with the child during this four-hour period other than to remove her from the immediate area of her home without her parents’ consent. In short, there was no knowledge on any person’s part other than defendant’s testimony as to where this child was confined during this period of time. By judicial notice, common law, and common sense, it is well known that a child of seven years of age, removed in the nighttime by a complete stranger from the security of the surroundings of her home and carried to some unknown place two miles distant, is not sufficiently capable of exercising self-help by voluntarily fleeing from her abductor even though she might have the opportunity to do so—and in this case such opportunity has not been proven other than by defendant’s self-serving declaration. To say that the child was not forced to stay with defendant is to reach a conclusion not supported by the evidence.
Lastly, defendant insists the jury was presented with overwhelming facts by himself and a supporting witness which proved that he was so drunk he could not have formulated the necessary intent to commit the crime he was accused of. *451 Without undue repetition, we dispose of this point by observing that the State adduced competent substantia] evidence dissipating this contention. The jury was at liberty to believe the State’s witnesses, and it apparently did.
The judgment appealed is affirmed.
JOHNSON, C. /., and SPECTOR, J„ concur.