JOHN LINDBERG and MARTHA LINDBERG v. STATE.

184 So. 662.
Opinion Filed November 8, 1938.
Rehearing Denied December 8, 1938.

*Zewadski & Pierce* and *H. Blaine Peacock,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

BUFORD, J.—On trial under an indictment charging murder in the first degree John Lindberg was convicted of murder in the first degree and his wife, Martha Lindberg, was convicted of murder in the second degree, to which convictions writ of error was sued out.

Plaintiffs in error challenge the sufficiency of the evidence. They challenge the admission of a kodak picture of the deceased taken after the killing and before the body had been moved, and also the action of the trial court in refusing to require the State's Attorney to turn over to defendant's counsel the transcript of testimony taken on the investigation of the involved homicide. They also challenge the action of the trial court in refusing to give certain requested instructions to the jury when submitting the case for their consideration.

The evidence was amply sufficient to warrant the jury in reaching the conclusion that the Lindbergs had conspired together to kill the deceased; that Charlie Brown, the deceased, had some time prior to the killing lived in the home of the defendants; that deceased came to the Lindberg home on this occasion by prearrangement with Mrs. Lindberg; that he came and asked for money in a manner which indicated that he had a right to expect to get money; that he came to the open dining room door and asked for the money.

That several people were present; that when those in the house saw Brown, the deceased, approaching, Mr. Lindberg took a shotgun and went out of sight into the kitchen. That when Brown asked Mrs. Lindberg for the money she told him that she had forty-five or fifty cents and laid some money in a purse down on the table; that Brown, without making any demonstration or threat and over no objection, took a step toward the table and then Mr. Lindberg stepped into the dining room from the kitchen and without a word of warning, or otherwise, shot the deceased; that the deceased turned and staggered out of the house a few feet and fell dead beside the fence. That immediately after the shooting Lindberg, while looking down on the dead body of deceased, repeatedly made the statement: "You dirty bastard, I got you where I have been wanting you for two years," or, "You dirty bastard, you, I got you where I want you. I have been wanting you there·for about two years and now I got you."

There are some conflicts and contradictions, but a state of facts as above outlined is established by evidence which the jury was warranted in believing. The weight of the evidence shows that the killing was a premeditated homicide of which the defendants were jointly guilty. The deceased was not armed. There is evidence from which the jury could conclude that deceased was invited by Mrs. Lindberg to come to the home of defendants at the time he did come. He was not warned not to enter the house. There was substantial evidence which the jury was warranted in believing that the deceased made no threats either in words or action evincing any intention to harm either of the defendants.

The Third question presented by plaintiffs in error is:

·"In a homicide case should the State be allowed to introduce in evidence a kodak photograph, taken by a deputy

sheriff long after the shooting, which contains a picture of the dead man lying crumpled up in a gruesome position, when neither the picture nor the scene it depicts has any materiality to the issues in the case and does not serve to illustrate, explain or clarify any issue nor resolve any conflict in the evidence, and the only effect, if not purpose, of which photograph is to inflame and prejudice the minds of the jury against the defendants at the outset of the trial?"

We think the contention is without merit.

In Wharton's Criminal Evidence, Vol. 2, 11th Ed., page 1320, the author says:

"Admissibility of photographs does not depend upon whether the objects they portray could be described in words, but rather on whether it would be useful to enable the witness better to describe and the jury better to understand the testimony concerned. Where they are otherwise properly admitted, it is not a valid objection to the admission of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible. Thus, a photograph has been admitted of a child who had been garrotted and his hands and feet had been cut off to prevent identification."

The photograph introduced in evidence in this case has been certified to this Court. It shows the body of a man lying on the ground near a fence and a door leading from what appears to be a driveway into a house. We gather from the evidence that this is the door into which deceased stepped a moment before he was shot.

It may be said that the kodak picture was prejudicial to the defendant, and this may be true, just as any other evidence admitted against a defendant is prejudicial to him.

In the case of Dedge v. State, 68 Fla. 240, 67 Sou. 43, we said:

"There was no error in admitting in evidence photographs of the scene of the homicide. The physical changes that took place between the time of the killing and the time of the trial were trifling and were accounted for, and as the jury visited the premises the admission of the photographs became as evidence well nigh negligible."

The propriety of introducing photographs in criminal trials was discussed at some length in the case of Hall v. State, 78 Fla. 420, 83 Sou. 513, and the introduction of photograph in that case was held to be without error. See also State v. Aeschbach, a New York case reported 153 Atlantic 505.

The record shows that the photograph introduced in this case was taken a few hours after the homicide and before the body of deceased had been moved from the place where he fell and was properly admitted in evidence.

The next question presented is:

"Where the State Attorney, in cross-examination of defendant and another witness, attempts to lay predicate for impeachment by asking questions taken from isolated portions of transcribed testimony taken by the State Attorney prior to trial, and said transcript is produced in court by the State Attorney and used in said cross-examination, should not the trial court, upon appropriate motion of defendants' counsel at the conclusion of said cross-examination, require the State Attorney to tender the complete transcript to defense counsel for inspection?"

The record shows that the State's Attorney had conducted an investigation of this homicide and in doing this he had a stenographer to take and transcribe the statements of the witnesses. On cross-examination of witnesses for the State in cases where the witnesses did not testify at the

trial as they had testified during the investigation, the State's Attorney, as a basis for impeachment, asked the witness under interrogation whether or not he had made a contradictory statement during the investigation and quoted from the stenographic transcript what purported to be the contradictory statement of the witness made during the investigation and where a witness denied having made such contradictory statement the original statement might have been proved by the stenographer who took and transcribed the original statement.

It is not shown that the transcribed testimony referred to was in any manner a court record.

There was no attempt to introduce the transcribed statements as substantive evidence. They were simply used as memoranda to promote accuracy. So far as the record shows, the transcript involved was the private memoranda of the State's Attorney. It amounted to no more than the private memoranda made by counsel for either party on a pre-trial examination of witnesses who would likely be called to testify at the trial. It is the right of counsel to make or have made memoranda of the statements of those who will probably be witnesses at a trial and to use that memoranda both to refresh his memory and for the purpose of impeachment, if the memoranda should become useful for that purpose, although the memorandum itself is not admissible as substantive evidence against the accused. See State v. Rhodes, 91 N. E. 186, 27 L. R. A. (N. S.) 558; see also Havenor v. State, 104 N. W. 116; People v. Fuski, 192 Pac. 552; Metzler, et al., v. U. S., 64 Fed. (2) 203.

The plaintiffs in error appear to rely on the case of People v. Miller, 257 N. Y. 54, 177 N. E. 306. The case is not in point because there the opinion shows counsel for defendant made demand upon the District Attorney that he be per-

mitted to inspect copy of the minutes of the grand jury from which the District Attorney had been examining in so far as they included testimony of the witness then upon the stand. The demand there was limited to the testimony of the witness then upon the stand. In the case before us the demand was for the full transcript, but, even so, the Court in the Miller case, speaking through Chief Justice CORDOZA, said:

"We think the minutes to the extent demanded should have been offered for inspection. The people invoke the rule whereby the secrecy of the proceedings before the grand jury must be preserved inviolate. Code Cr. Proc. No. 265. It is a rule not without exceptions, some of them declared by statute (Code Cr. Proc. No. 266) others implied by courts when essential to the ends of justice. People, *ex rel.* Hirschberg, v. Board of Supervisors of Orange County, 251 N. Y. 156, 170, 171, 167 N. E. 204; Attorney General v. Pelletier, 240 Mass. 264, 134 N. E. 407; State v. Campbell, 73 Kan. 688, 85 P. 784, 9 L. R. A. (N. S.) 533, 9 Ann. Cas. 1203; 4 Wigmore on Evidence, Secs. 2360-2363. The District Attorney might have refrained if he had pleased, from asking the witness anything about her previous testimony. He was not at liberty, after exhibiting so much of it as was helpful to the people, to deprive the defendant of the privilege of exhibiting the residue.

"The error, for such it was, was not so substantial in its bearing on the fate of the defendant as to call for a reversal of the judgment of conviction. Code Cr. Proc. Sec. 542. What was said by Mrs. Miller before the grand jury, though left unqualified by anything else that she may have said at the same time, was too trivial in its significance, too fully in accord with the testimony on her direct examination by counsel for the defendant, to have counted as a material factor in the choice of innocence or guilt. There is no

reasonable possibility that the qualifying statements, if any such there were, could have changed the verdict of the jury, if the defendant had been allowed to prove them."

So, in the instant case the matter of impeachment or the use of the notes became trivial. The effort at impeachment failed because the witness, in reply to the questions of the State's Attorney based upon the alleged former statement of the witness, said either that she did not remember what she said at that time or else practically admitted making the statement as quoted by the State's Attorney.

The remaining questions challenge the action of the Court in refusing to give certain charges requested in writing by the defendants in the court below.

We have considered the several requested instructions in connection with the entire instructions given by the court and we think that the rule that requested instructions are properly refused when such principles contained in said requested instructions have been fully covered by other instructions or charges given in the case. Dixon v. State, 16 Fla. 636; Pinkney v. State, 83 Fla. 550, 92 Sou. 160; Roberts v. State, 90 Fla. 779, 107 Sou. 204; Bass v. State, 58 Fla. 1, 50 Sou. 531; Perry v. State, 103 Fla. 580, 137 Sou. 789.

One of the charges requested was:

"You are charged that under the law the word 'imminent' as used in the Court's instruction upon self-defense as applied to the danger of committing a felony or doing great personal injury, means near at hand, mediate rather than immediate, close rather than touching."

In 16 C. J. 966, we find the following:

"It may be said generally that instructions should be given in plain language, and that the use of technical terms should be avoided as far as possible. Where, however, such terms are used, and their meaning may not be comprehended

readily by unprofessional persons, and it appears from the whole case made, that the jury may possibly misapply them, they should be defined or explained in such a way as to give to the jury a correct idea of their meaning, even though some of the jury may be able to explain them; but a failure to give such a definition or explanation is not error in the absence of a request for such an instruction. An express definition is not required usually where the court in its instruction has, in so many words, explained to the jury the meaning of the term. Where the terms are in common use and are such as can be understood by a person of ordinary intelligence it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or to explain them."

In Danford v. State, 53 Fla. 4, 43 Sou. 593, we held:

"The trial judge commits no error in refusing to give instructions which undertake to define the phrases 'actual danger' and 'apparent actual danger,' as these expressions are not technical and need no definition. Especially is this true when he gives instructions in behalf of the defendant which hypothesize the facts, showing 'actual danger' and 'apparent actual danger,' from the defendant's standpoint, and instructs the jury to acquit the defendant if they find these facts to exist."

It has not been made to appear how any prejudice could have resulted to the defendants by reason of the court's refusal to give the charge embracing a definition of the word "imminent."

Another charge requested and refused was:

"You are charged that where a man whose life has been threatened, or whose wife's life has been threatened, meets and slays his adversary under such circumstances as show that at the time his adversary was making some demonstration indicating an intention to then execute his threats,

and that he believed and had reasonable grounds to believe, that his life was then in danger, or his wife's life was then in danger, or that one of them was in danger of bodily harm, such homicide is justifiable although it may turn out that the deceased had no intention at the time to execute his threats."

The principles contained in this charge were covered in the general charge, but, aside from that, the requested charge was not proper to be given because it does not enunciate the principle that before one can be justified in committing a homicide in self-defense he must be reasonably free from fault in bringing on the difficulty. The principles of law involved in this charge were covered by the language used in the general charge as follows:

"A man who is assaulted in his own home, or on his own premises, or whose wife is assaulted thereon, may stand his ground and use such force as may appear to a reasonably cautious man to be necessary to save his life, or to save his wife's life, or to save either or both of them from great bodily harm, and such person is not obligated to avoid the difficulty."

The next question challenges the action of the court in refusing the following charge:

"You are charged that what is or is not a sufficient overt hostile demonstration within the meaning of the law of self-defense varies with the circumstances; under some circumstances a slight movement may justify instant action, because of *reasonable apprehension of danger*. No exact definition of overt act can be given. To require that menaces shall be such as to show unequivocally an intent to use a deadly weapon, or as to create a just apprehension of imminent danger, exacts too high a standard. The hostile demonstration or overt act upon the part of one person toward another, which will justify the latter in acting in self-

defense may consist of anything which evidences reasonably a present design upon the part of the former to take the latter's life or do him great bodily harm; it need not consist of an actual attack."

The record did not justify the court's being required to give this instruction. The charge assumes that the evidence shows that an overt act was committed by the deceased demonstrating the intent to inflict at least great bodily harm on one or the other of the defendants but, aside from this, if it can be construed that what the deceased was shown to have actually said and done constituted what the defendants may have conceived to be an overt act, the principles enunciated in the requested charge were sufficiently covered by the general charge.

The same is true of the other two requested instructions which were not given. The law is settled in this jurisdiction that, Where the charges given accord with the evidence and the law applicable thereto and there is ample evidence to sustain the verdict, technical errors, if any, in giving or refusing instructions to the jury will not cause the reversal of the judgment, no material errors appearing. Lewis v. State, 84 Fla. 466, 94 Sou. 154; McDaniel v. State, 103 Fla. 529, 137 Sou. 712.

For the reasons stated, the judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

TERRELL, C. J., dissents.