412 So.2d 850 (1982)
Aubrey Dennis ADAMS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 56134.
Supreme Court of Florida.
February 11, 1982.
Rehearing Denied May 5, 1982.
*851 Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., Tallahassee, for appellee.
Michael M. Corin, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of murder in the first degree and sentence of death.
The victim, eight years of age, left school on January 23, 1978, at about 2:30 P.M. Her body was found on March 15, 1978, in a wooded area near Ocala, Florida, by three men who were gopher hunting. The defendant's involvement in the disappearance and death of the victim was shown through circumstantial evidence and by statements, both written and oral, made by him to officers of the Ocala police department.
In his written statements, the defendant stated that he saw the victim walking home from school about a block and a half from her house and offered to give her a ride home. She got in the car and defendant drove away with her. The defendant remembered "being stopped somewhere and she was screaming and I put my hand over her mouth", and she quit breathing. In his oral statement the defendant said he had removed the clothes from the victim and used some cord which he carried in his car to tie her up so that she would fit into plastic bags. He also said that he tried to have sexual relations with her, but couldn't bring himself to do it. He denied having sexual relations with her.
Two expert witnesses testified that the cause of death was strangulation, but one of the experts stated that the child could have died from manual suffocation. One expert rendered an opinion that the victim's wrists had been taped prior to death. The defendant, in his oral statement, said that he had removed the victim's clothes, but *852 there was an indication from this statement that the clothes were removed after she quit breathing. However, the state argues that as a matter of logic, the clothes were removed prior to the time the wrists were bound, and, at that time, the victim was still alive.
The jury found the defendant guilty of murder in the first degree, and, after hearing evidence in the penalty phase of the trial, recommended that the defendant be sentenced to death.
The defendant argues that the trial court committed reversible error in failing to instruct the jury on the elements of the underlying felonies of sexual battery and kidnapping. The instructions of the court contained the following:
The killing of a human being in committing, or in attempting to commit any arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping is murder in the first degree, even though there is no premeditated design or intent to kill.
If a person kills another while he is trying to do or commit any arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping, or while escaping from the immediate scene of such crime the killing is in the perpetration of or in the attempt to perpetrate such arson, rape, robbery, burglary, abominable and detestable crime against nature or kidnapping and is murder in the first degree.
Defendant correctly points out that the instruction included references to two crimes which do not exist, to wit: rape and an abominable and detestable crime against nature. Defendant argues that it is an indispensable requisite to a fair trial to instruct the jury on all essential elements of a crime, but the jury was not instructed on the essential elements of sexual battery and kidnapping, the only possible applicable felonies with which the state could have sought a conviction for felony murder. He relies on Robles v. State, 188 So.2d 789 (Fla. 1966).
The indictment alleged that defendant murdered the victim, unlawfully, from a premeditated design by strangling. Under this charge, the state could prosecute under both a theory of premeditation and a theory of felony-murder. Barton v. State, 193 So.2d 618 (Fla.2d DCA 1966), cert. denied, 201 So.2d 459 (1967).
The record shows that defendant had visited in the home of the victim and she voluntarily accompanied defendant during the fatal ride. The evidence is sufficient to sustain a finding that the death was caused by strangulation, not by the defendant placing his hand over the mouth of the victim so as to keep her from screaming or yelling. Her hands were tied and taped behind her head, and a rope was around her neck. "Premeditation, like other factual circumstances, may be established by circumstantial evidence." Larry v. State, 104 So.2d 352, 354 (Fla. 1958).
The final argument of the state was geared toward the single question of whether or not the evidence was sufficient to show a premeditated design on the part of defendant to murder the victim.
In Knight v. State of Florida, 394 So.2d 997, 1002 (Fla. 1981), we considered that question:
The first issue concerns the trial judge's failure to instruct the jury on the elements of the underlying felony. The petitioner contends that our decision in Robles v. State, 188 So.2d 789 (Fla. 1966), is determinative and that a trial court's failure to give an adequate instruction on the underlying felony is a fatal error even when such instruction has not been requested by the defendant. Subsequent to our opinion on the initial appeal in this cause, we decided State v. Jones, 377 So.2d 1163 (Fla. 1979), which reaffirmed our decision in Robles v. State.

The record in the instant case reflects that the trial judge gave the general definitive instructions for homicide but did not specifically instruct upon the elements of the underlying felony of kidnapping or robbery. There was no request or objection by petitioner's trial counsel to this failure to give these instructions.

*853 It is clear that in both Robles and Jones the primary charge was felony murder and the state in neither case contended the evidence was sufficient to establish premeditated murder. We expressly noted in Jones that there was no contention that there was sufficient evidence to establish premeditated murder. We conclude that where there is sufficient evidence of premeditation, the failure to give the underlying felony instruction, where it has not been requested, is not error which mandates a reversal absent a showing of prejudice. See Frazier v. State, 107 So.2d 16 (Fla. 1958).
... .
[T]he record in this cause, and in particular the final argument of counsel, demonstrates that the state, although it mentioned felony murder, strongly argued premeditated murder to the jury. The record reflects that there is not only sufficient but overwhelming evidence of premeditated murder. We find that under the circumstances of this case and our review of the record that neither Robles nor Jones applies, but Frazier does apply. We are satisfied beyond a reasonable doubt that the failure to give the instruction at issue was not prejudicial and did not contribute to the petitioner's conviction. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
See also McKennon v. State, 403 So.2d 389 (Fla. 1981).
Although an erroneous or uninvited felony murder instruction was given, the evidence of premeditation was sufficient to render the erroneous instruction harmless.
Of course, it may have been defendant's counsel's strategy to avoid, at all costs, any unnecessary reference to the underlying felonies committed by the defendant during the perpetration of the murder. Perhaps that explains his failure to make any objection to the instruction. Request for an instruction or an objection to a failure to give an instruction is a prerequisite to raising an alleged error on appeal. Alford v. State, 280 So.2d 479 (Fla. 3d DCA), cert. denied, 284 So.2d 218 (1973); Flagler v. State, 198 So.2d 313 (Fla. 1967).
Defendant says that the trial court committed reversible error in admitting into evidence, over defendant's objection, two photographs of the victim. One photograph in color, was taken at the scene where the body was discovered. The other photograph, apparently taken somewhere else, is of the body and shows the victim's hands taped together with adhesive tape. The guidelines to be followed in determining the admissibility of photographic evidence were set forth by this Court in State v. Wright, 265 So.2d 361, 362 (Fla. 1972), as follows:
[T]he current position of this Court is that allegedly gruesome and inflammatory photographs are admissible into evidence if relevant to any issue required to be proven in a case. Relevancy is to be determined in the normal manner, that is, without regard to any special characterization of the proffered evidence. Under this conception, the issues of "whether cumulative", or "whether photographed away from the scene," are routine issues basic to a determination of relevancy, and not issues arising from any "exceptional nature" of the proffered evidence.
If the photograph meets the guidelines set forth above, the fact that the evidence is gruesome and offensive does not bar the admissibility. Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979). This is consistent with the reasoning in Mardorff v. State, 143 Fla. 64, 196 So. 625, 626 (1940), where the Court said:
Counsel contends that the pictures tended "to inflame the minds of the jury to a state of passion" and to "prejudice them against" the defendant rendering the evidence inadmissible. That this proof was prejudicial to the defendant there can be no doubt, but, as was so aptly stated in Wharton's Criminal Evidence, 11th Ed., Sec. 773, p. 1321:
"Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they *854 tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible."
In Lindberg v. State, 134 Fla. 786, 184 So. 662, we quoted the above authority and approved exhibition to the jury of a picture showing the body of the murder victim.
The colored photograph was relevant to show the crime scene and premeditation. The other photograph, showing the tying of the hands and the tape on the victim's hands, was relevant to show premeditation and the circumstances of death.
At trial the state sought to introduce two other photographs which were excluded by the trial judge upon the objection of the defendant. The trial judge exercised reasoned judgment and prohibited the introduction of duplicitous photographs. See Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). The trial court did not commit error in admitting these photographs into evidence.
We now turn to the propriety of the death sentence. The trial court found three aggravating circumstances: 1) that the capital felony was committed while defendant was engaged in or attempting to engage in, or in the flight after committing or attempting to commit rape and/or kidnapping; 2) that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; 3) that the capital felony was especially heinous, atrocious, or cruel.
The trial judge found three mitigating circumstances: 1) that the defendant had no significant history of prior criminal activity; 2) that the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; 3) that the defendant's age (20) was of significance.
The jury recommended death and the trial judge concurred in that recommendation.
In support of his finding of fact that the capital felony was committed while the defendant was engaged in or attempting to commit or flight after committing or attempting to commit a rape or kidnapping (Fla. Stat. § 921.141(5)(d)), the judge stated:
That the capital felony was committed while the Defendant was engaged in or attempting to engage in or in the flight after committing kidnapping, is proven beyond and to the exclusion of a reasonable doubt by Defendant Adams' admission, States Exhibit # 49, in which he says:
After getting off from work as a prison guard at Lowell Prison, he went to check his mail at his old residence, which is approximately two blocks from the residence of the victim, Trisa Gail Thornley, age 8, and saw her walking home from school about one and a half blocks from her home. He knew the victim and offered to give her a ride home. She got into Defendant's car and he started towards her home, then turned away towards the Pine Street Shopping Center; then out State Road 200 towards the Central Florida Community College. He remembered being stopped somewhere when she started screaming and he put his hand over her mouth and she stopped breathing.
The above fact of kidnapping is also supported by the testimony at the trial of the Defendant by police officers S.H. Stephenson, John E. Fluno and W.R. Fugitt regarding the written statements made by the Defendant and the oral statements concerning her death and her disappearance that he gave the three officers.
Kidnapping is also evidenced by the testimony of Trisa Gail Thornley's third grade school teacher, Carolyn Andrews, who observed the victim leave school at approximately 2:20 P.M. on January 23, 1978, and by Trisa Gail Thornley's aunt and uncle, Lawson and Theresa Hopper, and the victim's sister, Tracy Thornley, who stated that the victim, Trisa Gail *855 Thornley, did not return home from school that day as she usually did.
For additional support that 921.141(6) [sic] (d), Florida Statutes, is proved beyond and to the exclusion of a reasonable doubt, is the evidence proving that the capital felony was committed while the Defendant was engaged in or attempting to engage in or flight after committing rape is proven beyond and to the exclusion of a reasonable doubt by the testimony of Officer Stephenson who was present at the Defendant's interview, who stated that Defendant Adams said that he thought he tried to but couldn't do it, or couldn't bring himself to do it, and that her body was found nude with her hands taped behind her back, such tape applied to the victim, by sworn testimony of pathologist, Doctor Gertrude Warner of Ocala, Florida, as being applied around the wrists while the victim, Trisa Gail Thornley, was still alive.
Defendant argues that these findings do not prove that the victim's death occurred during or after the commission of a kidnapping. The state replies that the evidence is sufficient to show the crime of kidnapping was committed and cites Miller v. State, 233 So.2d 448 (Fla. 1st DCA 1970).
In Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla.), cert. denied, ___ U.S. ___, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), we described our function in reviewing a death sentence:
This Court's role after a death sentence has been imposed is "review," a process qualitatively different from sentence "imposition." It consists of two discrete functions. First, we determine if the jury and judge acted with procedural rectitude in applying section 921.141 and our case law. This type of review is illustrated in Elledge v. State, 346 So.2d 998 (Fla. 1977), where we remanded for resentencing because the procedure was flawed  in that case a nonstatutory aggravating circumstance was considered. See also Brown v. State, 381 So.2d 690 (Fla. 1980); Kampff v. State, 371 So.2d 1007 (Fla. 1979).
The second aspect of our review process is to ensure relative proportionality among death sentences which have been approved statewide. After we have concluded that the judge and jury have acted with procedural regularity, we compare the case under review with all past capital cases to determine whether or not the punishment is too great. Proffitt v. Florida, 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913] (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943 [94 S.Ct. 1951, 40 L.Ed.2d 295] (1974). In those cases where we found death to be comparatively inappropriate, we have reduced the sentence to life imprisonment. See Malloy v. State, 382 So.2d 1190 (Fla. 1979); Burch v. State, 343 So.2d 831 (Fla. 1977); Jones v. State, 332 So.2d 615 (Fla. 1976).
Neither of our sentence review functions, it will be noted, involves weighing or reevaluating the evidence adduced to establish aggravating and mitigating circumstances. Our sole concern on evidentiary matters is to determine whether there was sufficient competent evidence in the record from which the judge and jury could properly find the presence of appropriate aggravating or mitigating circumstances. If the findings of aggravating and mitigating circumstances are so supported, if the jury's recommendation was not unreasonably rejected, and if the death sentence is not disproportionate to others properly sustainable under the statute, the trial court's sentence must be sustained even though, had we been triers and weighers of fact, we might have reached a different result in an independent evaluation.
(Footnote omitted.) There appears to be sufficient competent evidence in the record from which the judge could properly find that the capital felony was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a rape or kidnapping.
Defendant argues that there is no crime of rape in Florida and that the *856 trial judge used a non-statutory aggravating factor in imposing the death sentence. The statute penalizing rape, section 794.01, Florida Statutes (1972), was repealed by chapter 74-121, section 1, Laws of Florida. Acts which would have constituted rape or attempted rape would constitute a sexual battery or attempt to commit sexual battery by virtue of section 794.011, Florida Statutes (1977). The word "rape" in section 921.141(5)(d) had not yet been changed to "sexual battery". Due process requires only that the law give sufficient notice so that men may conform their conduct so as to avoid that which is forbidden. The act itself, rather than its nomenclature, constitutes the aggravating circumstances. The trial judge did not err in finding defendant's acts constituted an aggravating factor.
Defendant next argues that the trial judge erred in finding that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. § 921.141(5)(e), Fla. Stat. The trial judge made the following finding of fact:
That the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody is proven beyond and to the exclusion of a reasonable doubt by the facts stated above proving kidnapping and rape by the additional fact that Trisa Gail Thornley was found dead on March 15, 1978, which prevented any testimony on her part concerning kidnapping and rape some seven weeks after her disappearance while walking home from school.
The record shows that the victim knew and could have identified defendant; that he encased the body in white plastic garbage bags and tied it with rope; that he disposed of the body in a desolate area; that he concealed his crime effectively for a period of time from January 23, 1978, to March 15, 1978.
In Riley v. State, 366 So.2d 19 (Fla. 1978), the robbery victim, who knew and could identify the defendant, had been bound and gagged. He was then shot in the head after one of the perpetrators expressed a concern for subsequent identification. This Court concluded that the aggravating circumstance existed because the defendant had killed the victim to avoid identification and arrest. See also Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
There was sufficient competent evidence in the record from which the judge could find that defendant committed this capital felony in an effort to avoid or prevent a lawful arrest.
Defendant also says that the trial court erred in finding that the capital felony was especially heinous, atrocious, or cruel. The trial judge made the following finding of fact:
That the capital felony was especially heinous, atrocious or cruel is proven beyond and to the exclusion of a reasonable doubt by expert medical testimony that the autopsy, performed by Doctors Gertrude Warner and William Shutze, showed a bruise on one arm, inflicted prior to death, that the autopsy showed swelling in the hands induced by tight binding with tape prior to death, State Exhibit # 17, that the autopsy showed that the body was a nude body of an eight year old girl whose hands were tightly taped behind her back prior to death, which showed that Trisa Gail Thornley had time to anticipate her murder and that the autopsy and photographs showed seven coils of rope with a circumference of nine and three-fourths inches around the neck of Trisa Gail Thornley as shown in evidence by State Exhibit # 16, and that the child's body was placed in a plastic garbage bag and thrown in a wooded area some three miles from her home.
Defendant argues that this aggravating circumstance is devoid of factual and legal support. We disagree.
*857 The fear and emotional strain preceding a victim's almost instantaneous death may be considered as contributing to the heinous nature of the capital felony. Knight v. State, 338 So.2d 201 (Fla. 1976). A homicide committed through strangulation has been held to be especially heinous, atrocious, and cruel. Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). From defendant's statement we find that the victim was "screaming" prior to death. A frightened eight-year-old girl being strangled by an adult man should certainly be described as heinous, atrocious, and cruel. There was sufficient competent evidence in the record from which the trial judge could find the presence of this aggravating circumstance.
Although the trial judge found, as a mitigating factor, that the capital felony was committed while defendant was under the influence of extreme mental or emotional disturbance, the defendant says that there should be an independent determination and finding that at the time the crime was committed the defendant's capacity to appreciate the criminality of his conduct or to conform it to the requirements of law was substantially impaired. The defendant says that his deteriorating marital situation and his wife's apparently blatant infidelity with one of his friends led to his extreme mental or emotional disturbance and clearly hampered his capacity to appreciate the criminality of his conduct or to conform it to the requirements of law. There is little, or no, causal relationship between defendant's marital problems and an eight-year-old little girl. There was no testimony that defendant had suffered from mental illness in the past. An expert witness testifying for the defense said that, in his opinion, the defendant knew the difference between right and wrong on the date of the commission of the offense. The trial court did not err in failing to find that the capacity of defendant to conform his conduct to requirements of law was substantially impaired as a result of his marital distress.
The findings of the trial judge were sufficient to show that the sentence of death resulted from reasoned judgment. This reasoned judgment comports with our consideration of other cases and the sentence of death was appropriate under the circumstances. There being no reversible error, the judgment and sentence of the trial judge are affirmed.
It is so ordered.
SUNDBERG, C.J., and OVERTON and ALDERMAN, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
McDONALD, J., concurs as to conviction and dissents as to sentence.
BOYD, Justice, concurring in part and dissenting in part.
I concur in that part of the majority opinion affirming appellant's conviction of murder in the first degree.
One of the principal functions of this Court in considering cases in which the death penalty has been ordered is to review the aggravating and mitigating circumstances to assure that similar punishment is given for similar crimes.
The trial judge found three mitigating circumstances: (1) that the defendant had no significant history of prior criminal activity; (2) that the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; (3) that the defendant's age (20) was of significance.
In weighing the aggravating and mitigating circumstances of this case, and comparing it with prior similar crimes of violence, it is my opinion that the law requires this Court to order a reduction in the sentence to life imprisonment without eligibility for parole for twenty-five years.