580 So.2d 595 (1991)
Dennis SOCHOR, Appellant,
v.
STATE of Florida, Appellee.
No. 71407.
Supreme Court of Florida.
May 2, 1991.
Rehearing Denied June 18, 1991.
*598 Richard L. Jorandby, Public Defender and Gary Caldwell, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Dennis Sochor appeals his convictions of kidnapping and first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and the death sentence.
Testimony at trial established that, on December 31, 1981, the victim, an eighteen-year-old female, and a friend went to a lounge located in Broward county to celebrate New Year's Eve. During the course of the evening the friend became ill. Sochor and his brother, Gary, helped the victim escort her friend outside to her car. Promising her that she would return soon, the victim returned to the lounge.
Early the next morning the friend awoke in the car, discovered the victim missing, and called the police. The police obtained a photograph taken that night which showed an unidentified man sitting at the bar near the victim. The photograph was shown on television, and, several days later, that man was identified as Sochor. The police talked with Sochor's roommates who said that he had left suddenly when he saw his picture on television. They also told police that Sochor's brother, Gary, had been visiting him and had recently returned to Michigan. The police interviewed Gary who implicated his brother in the victim's disappearance and voluntarily returned to Florida to attempt to locate her body. In May 1986 authorities arrested Sochor in Georgia on *599 an unrelated offense and extradited him to Florida where a grand jury indicted him on charges of first-degree murder and kidnapping. The victim's body has never been recovered.
At trial Gary gave the following testimony. He went to the lounge on New Year's Eve with his brother who spent the evening talking with the victim and her friend. When it came time to leave, the victim and his brother were kissing in the lounge parking lot while Gary waited in the truck. Several minutes later, she agreed to go to breakfast with them. They left the parking lot with Sochor driving his employer's truck, Gary in the passenger seat, and the victim seated between them. Sochor drove to a secluded spot nearby and stopped the truck. Gary remembered the victim screaming for help and seeing Sochor on top of her with her hands pinned down on the ground. He yelled at him and threw a rock over his head. In response Sochor stopped assaulting the victim, turned and looked at Gary like a man "possessed," angrily told him to get back in the truck, and resumed his assault. Awhile later Sochor got in the truck with Gary and drove home. The next morning Gary found a woman's shoe and sweater and a set of keys in the truck. He hid the keys. Later he noticed that the truck had been cleaned and the articles removed. When told about the keys, Sochor became upset and demanded their return, which Gary did. A few days later Gary returned to Michigan.
The state also introduced Sochor's three taped confessions which it played to the jury. In these statements Sochor said that he met the victim that night at the bar and spent the evening talking with her. He remembered kissing her in the lounge parking lot and wanting to have sex. When she refused, they argued and he grabbed her. When she hit him, he became angry and choked her. He thought that he killed her and drove to a secluded area where he disposed of the body. He said that Gary was not with him when this happened. When he awoke the next morning, he remembered feeling that something terrible had happened. He thought he had raped "another girl." He also stated that he found several woman's articles in the truck which he put in the trash. When he saw his picture on television, he took his employer's truck and drove to Tampa.[1] From there he went to New Orleans where he stayed for some time before moving to Atlanta where he was arrested.
The jury convicted Sochor of both kidnapping and first-degree murder and, by a vote of ten to two, recommended the death penalty. The trial judge sentenced Sochor to death, finding four aggravating,[2] and no mitigating, circumstances. Sochor now appeals, claiming errors in both the guilt and sentencing phases of his trial.
Sochor raises numerous claims of error in the guilt phase. His first claim is that there was insufficient evidence to convict him of either premeditated or felony murder.[3] Assuming that there are sufficient facts to present the issue to the jury, whether the evidence shows premeditation is a question of fact for the jury to decide. Preston v. State, 444 So.2d 939 (Fla. 1984). As this Court has previously stated:
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, *600 and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned. No definite length of time for it to exist has been set and indeed could not be.
Larry v. State, 104 So.2d 352, 354 (Fla. 1958). Accord Preston; Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
After examining the record, we find sufficient evidence to present the issue of premeditation to the jury and from which the jury could have found premeditation. In addition to the circumstances of the crime, Gary testified that, while the victim screamed for help, he interrupted Sochor who stopped assaulting her long enough to turn, look at Gary, and shout at him to get back in the truck. Sochor then resumed his attack. Thus, he had a sufficient period of reflection to contemplate the nature of his act. He could have stopped his assault at that point but chose to continue. We find Sochor's claim that the offense was a heat-of-passion type homicide insufficient to preclude a finding of premeditation.
We also find sufficient evidence of kidnapping to support Sochor's conviction on a felony-murder theory.[4] The evidence adduced at trial shows that, although the victim may have entered the truck voluntarily, at some point she was held unwillingly. Her removal from the lounge parking lot to a secluded area facilitated Sochor's acts, avoided detection, and was not merely incidental to, or inherent in, the crime. Thus, the evidence supports the underlying felony of kidnapping as well as Sochor's separate conviction of kidnapping. See Carron v. State, 427 So.2d 192 (Fla. 1983); Faison v. State, 426 So.2d 963 (Fla. 1983); Mobley v. State, 409 So.2d 1031 (Fla. 1982).[5]
Sochor next claims that the trial court improperly admitted his confessions because the state did not independently prove the corpus delicti of the homicide. An individual's confession to a crime is insufficient evidence of a criminal act where no independent evidence exists to substantiate the occurrence of the crime. State v. Allen, 335 So.2d 823 (Fla. 1976). Because the victim's body has never been found, Sochor contends that the state has no evidence, other than his confession, that she is dead. In proving corpus delicti, however, circumstantial evidence is sufficient. Buenoano v. State, 527 So.2d 194 (Fla. 1988). Proof beyond a reasonable doubt is not necessary. Stano v. State, 473 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986); Bassett v. State, 449 So.2d 803 (Fla. 1984). The victim disappeared New Year's Eve and has not been seen since that night. It was uncharacteristic for her not to come home. She had a good relationship with her family and her boyfriend and kept in touch. None of her belongings were missing from her apartment. Gary testified that when he last saw the victim she was screaming for help with his brother on top of her. We find sufficient evidence that the victim is indeed dead and that her death was due to the criminal agency of Dennis Sochor. Moreover, Sochor, in closing argument, did not contest the fact that she was dead. Rather, counsel based the defense strategy on the theories of voluntary intoxication or mistaken identity, i.e., that Gary actually committed the crime.[6]
*601 Sochor next complains of various errors which, taken as a whole, led to an unfair trial. He acknowledges that counsel did not object at trial to any of the complained-of errors and, pursuant to the contemporaneous objection rule, they are not preserved for review. See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Jones v. State, 449 So.2d 253 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). Despite the lack of objections, Sochor contends that (1) the trial was so unfair that fundamental error occurred and (2) the contemporaneous objection rule has less force in a capital case. This Court has previously rejected the second argument. Rose v. State, 461 So.2d 84 (Fla. 1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); see Pope v. Wainwright, 496 So.2d 798 (Fla. 1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987); Jones v. Wainwright, 473 So.2d 1244 (Fla. 1985).
As to the first argument, fundamental error occurs in cases "where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." Ray v. State, 403 So.2d 956, 960 (Fla. 1981). The error must amount to a denial of due process. Ray; Castor v. State, 365 So.2d 701 (Fla. 1978). After carefully reviewing the record, we find that the claimed errors, taken individually or collectively, do not constitute fundamental error.[7] Thus, we reject Sochor's claim.
Likewise, although Sochor now claims various errors in the jury instructions, his counsel neither objected to the challenged instructions nor requested other instructions. Thus, in the absence of fundamental error, these claims also are precluded from appellate review. See Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982); Castor. Some of Sochor's claims on this issue merit no discussion;[8] however, others require inquiry.
We first examine Sochor's argument that the trial court committed fundamental error by failing to instruct the jury on voluntary intoxication as a defense to felony murder based on kidnapping. Voluntary intoxication is a defense to felony murder when the underlying felony is a specific-intent crime. Linehan v. State, 476 So.2d 1262 (Fla. 1985). Kidnapping is a specific-intent crime. Heddleson v. State, 512 So.2d 957 (Fla. 4th DCA 1987); Mullin v. State, 425 So.2d 219 (Fla. 2d DCA 1983); see § 787.01, Fla. Stat. (1989). Although the trial court instructed the jury that voluntary intoxication was a defense to premeditated murder, it did not so instruct the jury with regard to felony murder.
Fundamental error is error which goes to the foundation of the case. Sanford v. Rubin, 237 So.2d 134 (Fla. 1970). Failure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error. Voluntary intoxication is a defense to, but not an essential element of, kidnapping. Therefore, the state did not have to disprove voluntary intoxication in order to convict Sochor of felony murder based on the underlying felony of kidnapping. Because the complained-of instruction went to Sochor's defense and not to an essential element of the crime charged, an objection was necessary to preserve this issue on appeal. Moreover, there was sufficient evidence of attempted sexual battery, a general-intent crime to which voluntary intoxication *602 is not a defense,[9] upon which to base a conviction of felony murder. Sochor's claim as to this point therefore fails.
We also address Sochor's argument that the trial court fundamentally erred by failing to instruct the jury on the statute of limitation as an absolute defense to felony murder and kidnapping. This, too, is a defensive matter that must be raised at trial. Had it been raised, the state could have shown that, even though Sochor was indicted for kidnapping beyond the applicable four-year limitation period, his undisputed, continuous absence from the state tolled the running of the statute. See § 775.15(6), Fla. Stat. (1989). Thus, the trial court did not commit fundamental error by failing to instruct the jury in this regard. In addition, capital crimes are not subject to a statute of limitation. § 775.15(1), Fla. Stat. (1989). Hence, Sochor's argument that his murder conviction must be overturned and remanded for a new trial because the limitation period had expired on several of the underlying felonies supporting a possible felony-murder theory is untenable.
Finally, we recently held that the failure to give the long-form excusable homicide instruction is not fundamental error. State v. Smith, 573 So.2d 306 (Fla. 1990). Sochor's claim as to this point thereby fails.
Our review of the record shows competent, substantial evidence to support Sochor's convictions of kidnapping and first-degree murder. We therefore affirm those convictions.
Turning to the penalty phase, Sochor's first claim is that the trial court improperly allowed the state to present and argue nonstatutory aggravating circumstances. To begin with, Sochor contends that the state introduced victim impact evidence in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). Sochor's Booth claim is predicated upon prosecutorial comments and arguments to which no objection was made. To preserve a Booth issue an objection must be made. In our view, had there been an objection, it would not have been sustained. Thus, this issue is procedurally barred and lacks substance. Parker v. Dugger, 550 So.2d 459 (Fla. 1989); Jackson v. Dugger, 547 So.2d 1197 (Fla. 1989).
Sochor also contends that the state presented evidence of his lack of remorse, an improper aggravating circumstance. Pope v. State, 441 So.2d 1073 (Fla. 1983). After reviewing the record, we find that the prosecutor's comments during closing argument in their totality did not rise to such a level as to pinpoint lack of remorse or warrant a new sentencing trial. See Bertolotti v. State, 476 So.2d 130 (Fla. 1985).
Sochor further contends that the state introduced improper evidence of prior violent acts through the testimony of his ex-wife, Patricia Neal, and introduced improper hearsay testimony of, and his taped confession to, a rape in Michigan of which there was no conviction. In neither instance did Sochor's counsel object to the testimony, and these points are therefore procedurally barred. Moreover, Ms. Neal's testimony was introduced to rebut Sochor's defense that he became violent only after consuming alcohol; she testified to violent acts by Sochor when he was sober. The testimony regarding the Michigan rape was relevant to rebut the mitigating factor of no significant history of prior criminal activity. The playing of Sochor's taped confession during the penalty phase did not violate Rhodes v. State, 547 So.2d 1201 (Fla. 1989). Thus, we find no error in these claims. Lastly, Sochor's claim of error with regard to improper prosecutorial comments on this evidence during closing argument has no merit.
Sochor's next claim, regarding alleged errors in the penalty jury instructions, likewise must fail. None of the complained-of jury instructions were objected to at trial, and, thus, they are not preserved for appeal. Vaught v. State, 410 So.2d 147 *603 (Fla. 1982). In any event, Sochor's claims here have no merit.[10]
Sochor also claims that the prosecutor and trial court denigrated the jury's role in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Florida's standard jury instructions fully advise the jury of the importance of its role and do not violate Caldwell. Combs v. State, 525 So.2d 853 (Fla. 1988); Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Further, Sochor did not raise this claim at trial. Thus, it has not been preserved for review. Combs; Jackson v. State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988).
Turning to the actual sentence, Sochor claims that the evidence did not support three of the four aggravating factors found by the trial court. He does not contest the finding of a previous conviction of a violent felony, and we find this aggravator supported by the record. Sochor does contest the finding that the murder was committed during a felony. We have already found sufficient evidence of both kidnapping and attempted sexual battery. Thus, the evidence supports this aggravating factor.
The evidence also supports finding that the murder was especially heinous, atrocious, or cruel. Fear and emotional strain can contribute to the heinousness of the murder. Adams, 412 So.2d at 857. Gary testified that the victim screamed for help after she was dragged from the truck and scratches on Sochor's face indicate that a struggle took place. The evidence supports the conclusion of horror and contemplation of serious injury or death by the victim. Moreover, Sochor confessed that he choked the victim to death. It can be inferred that "strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable." Tompkins v. State, 502 So.2d 415, 421 (Fla. 1986) (citations omitted), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987). Accord Johnson v. State, 465 So.2d 499 (Fla.), cert. denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985); Doyle v. State, 460 So.2d 353 (Fla. 1984). The trial court properly found this aggravating factor.
We disagree, however, that the murder was committed in a cold, calculated, and premeditated manner. Although there was sufficient evidence to support a premeditated murder conviction, this aggravator requires a "heightened" level of premeditation. Hamblen v. State, 527 So.2d 800 (Fla. 1988). The evidence introduced at trial failed to demonstrate this requisite heightened level of premeditation. Rather, the killing most likely resulted from the victim's refusal to have consensual sex with Sochor and her resistance when he attempted to force himself upon her.
Sochor argues that the court should have found as mitigating factors that he was under the influence of extreme mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was substantially impaired. In proof he relies on evidence of his alcohol use the night in question and on doctors' testimony that he was a dangerous and violent person when drinking. Sochor *604 is an admitted rapist. As testified to by his ex-wife and the victim of a prior rape, when they declined to accede to Sochor's requests for sex he became violent. He himself explains that, when sexually aroused, an indescribable feeling comes over him in the form of an irresistible impulse, particularly when drinking. It is difficult to discern whether such conduct is mitigating, but the decision as to whether a particular mitigating circumstance is proven lies with the judge and jury. Reversal is not warranted simply because the appellant arrives at a different conclusion. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985). Although several doctors testified as to Sochor's mental instability, one testified that Sochor had not been truthful during testing and another testified that Sochor had "selective amnesia." While the sentencing order mentioned that Sochor had been found competent to stand trial and did not require Baker Act hospitalization, it is clear from the record that this is not the standard the court used in sentencing Sochor. We see no reason to disturb the court's rejection of these mitigating factors.
Sochor also argues that the trial court failed to consider and improperly excluded nonstatutory mitigating evidence. The court in its sentencing order stated "[t]here were several members of the Defendant's family who tearfully and grievously testified. However, after considering their testimony, this Court finds no nonstatutory `mitigating' circumstances." This testimony related Sochor's physical abuse by his father, his financial support of the family when his father was unable to work, his alcohol problems, and his violent temper and mental instability. The trial judge considered the evidence of family and personal history, but determined it was so insignificant that it had not been established as a mitigating circumstance. Deciding whether such family history establishes mitigating circumstances is within the trial court's discretion. King v. Dugger, 555 So.2d 355 (Fla. 1990); Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). We find no abuse of discretion in finding that the evidence did not rise to being a mitigating circumstance.
We also disagree with Sochor's claim that his death sentence is disproportionate. The trial court carefully weighed the aggravating factors against the lack of any mitigating factors and concluded that death was warranted. Even after removing the aggravating factor of cold, calculated, and premeditated there still remain three aggravating factors to be weighed against no mitigating circumstances. Striking one aggravating factor when there are no mitigating circumstances does not necessarily require resentencing. Robinson v. State, 574 So.2d 108 (Fla. 1991); Holton v. State, 573 So.2d 284 (Fla. 1990); James v. State, 453 So.2d 786 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984); Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). Under the circumstances of this case, and in comparison with other death cases, we find Sochor's sentence of death proportionate to his crime. E.g., Hitchcock v. State, 578 So.2d 685 (Fla. 1990); Tompkins; Doyle.
Finally, we have previously rejected claims that Florida's sentencing process is unconstitutional. Young v. State, 579 So.2d 721 (Fla. 1991); Gunsby v. State, 574 So.2d 1085 (Fla. 1991); Van Poyck v. State, 564 So.2d 1066 (Fla. 1990).
We therefore affirm the convictions of kidnapping and first-degree murder and the death sentence.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Several weeks after the victim's disappearance police found the truck abandoned in Tampa.
[2] The court found the following aggravating factors: (1) Sochor was previously convicted of a felony involving the use or threat of violence to the person, § 921.141(5)(b), Fla. Stat. (1989); (2) the killing was committed while Sochor was engaged in the commission of a felony, § 921.141(5)(d); (3) the killing was especially heinous, atrocious, or cruel, § 921.141(5)(h); and (4) the killing was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, § 921.141(5)(i).
[3] The verdict form did not indicate whether the jurors found Sochor guilty of first-degree murder based on premeditation or felony murder. Defense counsel neither requested such a specialized jury verdict form nor is one required. Brown v. State, 473 So.2d 1260 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
[4] The court instructed the jury that it could find felony murder based on the felonies of kidnapping or sexual battery, attempt to commit either crime, or escaping from the immediate scene of a kidnapping or sexual battery.
[5] We also find sufficient evidence in the record to support the underlying felony of attempted sexual battery. Sochor stated that he wanted to have sex with the victim and that he felt an uncontrollable urge to do so. The next day he thought he had raped "another girl." Gary testified that he saw Sochor on top of the victim while she resisted.
[6] Sochor also contends there was insufficient evidence of venue and that the state failed to prove his sanity at the time of the offense beyond a reasonable doubt. We find these claims without merit.
[7] Sochor contends that the following were fundamental error: (1) prosecutorial comments on facts outside the evidence; (2) opinions of government witnesses as to Sochor's veracity and guilt; (3) a defense witness's statement on cross-examination that an individual from the prosecutor's office compared Sochor to Ted Bundy; (4) arguments by the state that Sochor's trial was the only time the state could try him for his crimes; (5) other evidence of Sochor's bad character, the victim's good character, beauty, and family; and (6) perjured testimony by a jailhouse informant as to whether he received leniency from the state in return for his testimony regarding Sochor's incriminating statements.
[8] We reject without discussion Sochor's claims that the trial court fundamentally erred by failing to properly instruct the jury as to: nondeath lesser-included offenses; manslaughter; third-degree murder; and kidnapping.
[9] Buford v. State, 492 So.2d 355 (Fla. 1986).
[10] Sochor contends that the felony-murder instruction was inadequate because it did not define the underlying felony and did not inform the jury that this aggravating circumstance was only applicable to premeditated murder. We reject this claim because the court instructed the jury on the underlying felonies during the guilt phase and because this aggravating circumstance is applicable to both felony murder and premeditated murder. White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). We reject without discussion Sochor's other claims: that the instructions as to the aggravating factors of heinous, atrocious, or cruel and cold, calculated, and premeditated were improper; that the instructions as to statutory and nonstatutory mitigating evidence were improper; that the jury was improperly instructed as to the burden and standard of proof with regard to mitigating circumstances; and that Florida's sentencing scheme carries a presumption of death upon the finding of a single aggravating factor.